**UNITED STATES of America,
Appellee,**

v.

**Dana Rudolph PEEP, Appellant.
No. 73–1293.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1973.

Decided Jan. 14, 1974.

Curtis H. Foster, Minneapolis, Minn., for appellant.

Joseph T. Walbran, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before HEANEY, STEPHENSON and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Dana Rudolph Peep was convicted of unlawful possession of heroin and hashish in violation of 21 U.S.C. § 844(a). In this appeal, he challenges the warrantless search of his person which produced the evidence of his guilt.[1]

On August 25, 1972, law enforcement officers assigned to the Federal Drug Abuse Enforcement Program obtained a warrant to search the premises at 3445 Second Avenue, South, in Minneapolis. The warrant authorized a search of the premises and the persons of one "Larry Conley" and one "John L/N/U" for "narcotic drugs and controlled substances possessed without authority of law." The officers were investigating the source of narcotics believed to have caused the death of Thomas Mueller the day before. The officers proceeded to the house at 3445 Second Avenue, South, where one John Pickus was identified as the "John L/N/U" named in the warrant. Pickus was searched and the officers found a silver bullet containing a small spoon of the type employed by narcotics users in "snorting" heroin. A search of the basement revealed other

---

1. A motion to suppress was denied by the trial judge, Honorable Miles W. Lord, on March 19, 1973, and the case was thereafter tried to the court without a jury.

narcotics equipment, including a gram weighing scale and squares of white paper used for measuring out and wrapping quantities of narcotics. It was conceded by defense counsel that this was a place where narcotics were being dispensed.

While the officers were conducting their search, two men entered by the back door and dropped a sack of narcotics on the floor. Thereafter, another man entered the apartment with a plastic baggie of marijuana hanging from his breast pocket. A search of this man produced six more identically wrapped packets of heroin.

The search had commenced about 2:30 p. m. At about 3:45 p. m., Larry Conley (named in the search warrant), appellant Dana Rudolph Peep and a third man entered together through the rear door. Officer Walter Cecil identified himself as a police officer and informed them that he had a search warrant and would like to have identification. At the same time, he summoned Officer Johnson from the basement. Officer Cecil observed a large bulge in Peep's front pants pocket. He reached over to pat it to determine if it was a weapon. As he did so, Peep slapped his hand away, at which point Officers Johnson and Cecil seized Peep's hands and Johnson reached into Peep's pocket and removed a large roll of money, approximately $3,800.00. Johnson then conducted a more thorough search and removed two matchboxes from Peep's shirt pocket. The boxes contained the narcotics which were the subject of the charge.

The officers conducting the search had no prior knowledge of Peep, and he was not described in the warrant.

Appellant contends that the search was unlawful because it was not (1) a search incident to a lawful arrest, (2) a proper "stop and frisk" protective search, or (3) a proper search pursuant to a search warrant.

At the time of the search of Peep's person, the officers had the following information: (1) that equipment for the distribution of narcotics was located in the apartment; (2) that three men had previously entered the apartment carrying or concealing on their persons substantial quantities of narcotics; (3) that in a prior search of an apartment occupied by Larry Conley a hand grenade and a .45 caliber automatic had been seized; and (4) that "John" had been heard to brag about having shot a police officer.

It does not seem to be disputed that the officers were on the premises by authority of a validly issued state search warrant. The search of Peep, however, must be justified on other grounds, because the applicable Minnesota statute does not authorize a general search [2] and the warrant did not name Peep as one of those authorized to be searched.[3]

We find no difficulty in holding that the original pat down which produced the large roll of currency was justified as weapons search under the "stop and frisk" doctrine of Terry v. Ohio, 392 U. S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See Glick v. Erickson, 488 F.2d 182 (8th Cir. 1973); United States v. Unverzagt, 424 F.2d 396 (8th Cir. 1970). The specific and articulable facts summarized above, taken with the rational inferences from those facts, clearly and reasonably warranted that protective intrusion. However, the ensuing search

---

2. "A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property or thing to be seized and particularly describing the place to be searched." Minn.Stat.Ann. Sec. 626.08 (Supp. 1973).

3. A point raised incidentally in appellant's brief, but not argued, was the allegedly late filing of the return on the search warrant.

Minn.Stat.Ann. Sec. 626.15 (Supp.1973) requires a return within 10 days. The warrant was issued August 25, 1972 but the return was not filed until September 5, 1972, 11 days after its issuance. The issuance of the warrant clothed the officers with authority to enter the apartment. Since the search of Peep's person was not made pursuant to the warrant, we need not consider the effect of this apparent defect under state law.

which revealed the narcotics inside the matchboxes requires closer scrutiny, for even *Terry* requires that the intrusion be "reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio, *supra,* 392 U.S. at 20, 88 S.Ct. at 1879.

It may be argued that the search of Peep's breast pocket which produced ten matchboxes which in turn contained narcotics exceeded the outer limits of a weapons search. *See* Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L. Ed.2d 917 (1968); United States v. Del Toro, 464 F.2d 520 (2d Cir. 1972). We need not make this determination, however, for at that point the officers had probable cause to arrest Peep and to conduct a full search of his person.

■ Experienced police officers were present in a residence which was obviously being used for the distribution of narcotics and where narcotics were in open display by persons entering the apartment. Under the circumstances above described "[i]t is plainly unreasonable to infer that anyone else other than a participant would be allowed on the premises." United States v. Pentado, 463 F.2d 355, 363 (5th Cir. 1972), cert. denied, 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 271 (1973). In such a pervasive setting probable cause existed to search all present. *See* United States v. Johnson, 154 U.S.App.D.C. 393, 475 F.2d 977, 980 (1973) (Bazelon, C. J., concurring in part and dissenting in part); State v. De Simone, 60 N.J. 319, 288 A.2d 849 (1972). It is important to distinguish the search in this case from the search of companions in a public place. *Cf.* United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). While a man is entitled to know that wherever he may be "he will remain free from unreasonable searches," Katz v. United States, 389 U.S. 347, 359, 88 S.Ct. 507, 515, 19 L.Ed.2d 576 (1967), the test of *reasonableness* will include considerations of place and *circumstance.*

In this case two additional facts developed from the original pat down. First,

although the police officers had been identified and the reason for their presence had been disclosed, Peep nonetheless resisted the pat down by brushing the officer's hands aside. "[D]eliberately furtive actions * * * at the approach of * * * law officers are strong indicia of *mens rea* * * *," Sibron v. New York, 392 U.S. 40, 66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968), and have supported probable cause in several cases. *See* Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) (where there is a high risk of loss of evanescent evidence); United States v. Parham, 458 F.2d 438 (8th Cir. 1972); United States v. Jones, 452 F.2d 884 (8th Cir. 1971); Dupree v. United States, 380 F.2d 233 (8th Cir. 1967), cert. denied, 392 U.S. 944, 88 S.Ct. 2289, 20 L.Ed.2d 1407 (1968); United States v. Cisneros, 448 F.2d 298 (9th Cir. 1971); Walker v. United States, 117 U. S.App.D.C. 151, 327 F.2d 597 (1963), cert. denied, 377 U.S. 956, 84 S.Ct. 1635, 12 L.Ed.2d 500 (1964).

Second, the disclosure of the substantial cash in Peep's possession gave added force to the officers' belief that Peep was indeed a part of the drug operation. *See* United States v. Riggs, 474 F.2d 699 (2d Cir.), cert. denied, 414 U.S. 820, 94 S.Ct. 115, 38 L.Ed.2d 53 (1973).

■ We assess probable cause in terms of the eyes of a reasonably cautious and prudent peace officer in the circumstances of the moment. Bell v. United States, 102 U.S.App.D.C. 383, 254 F.2d 82, 84–86 (D.C.Cir.), cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed. 2d 113 (1958). Probable cause to arrest depends "upon whether, at the moment the arrest was made, * * * the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). *See also* Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93

L.Ed. 1879 (1949). And in *making this assessment* we do not isolate for independent analysis each factual circumstance, but rather we view the action of the arresting officers on the basis of the cumulative effect of such facts in the totality of the circumstances. Jackson v. United States, 408 F.2d 1165 (8th Cir.), cert. denied, 396 U.S. 862, 90 S.Ct. 135, 24 L.Ed.2d 114 (1969); Wangrow v. United States, 399 F.2d 106 (8th Cir.), cert. denied, 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968); United States v. Williams, 143 U.S.App.D.C. 16, 442 F.2d 738 (1970). Here the arrest took place as Peep resisted the pat down.[4] We hold the search was incident to a lawful arrest made upon probable cause.

In so holding we need go no further. The Supreme Court has recently held that a law enforcement officer's authority to make a full search incident to a lawful custodial arrest requires no justification beyond the fact of the arrest itself. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Writing for the Court, Justice Rehnquist said:

> A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would *in* fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest

requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment. *Id.* at 235, 94 S.Ct. at 477.

Affirmed.

---

4. Given probable cause for arrest before the search, it is immaterial if the formalities are deferred until afterward. United States v. Skinner, 412 F.2d 98 (8th Cir.), cert. denied, 396 U.S. 967, 90 S.Ct. 448, 24 L.Ed.2d 433 (1969).