UNITED STATES of America, Appellee,

v.

**Robert Lee REGAN, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**John S. GRIFFIN, Appellant.**

**Nos. 75–1230, 75–1256.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1975.

Decided Dec. 4, 1975.

---

James M. Merberg, Boston, Mass., for Regan.

John R. Wylde, Jr., Minneapolis, Minn., for Griffin.

Joseph T. Walbran, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and VAN PELT,* Senior District Judge.

GIBSON, Chief Judge.

Appellants, Robert Lee Regan and John S. Griffin, were jointly tried to the court on stipulated facts without a jury and convicted on count III of a six-count indictment of possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1970). Regan was sentenced to thirty years in prison plus six years mandatory parole, and Griffin to eight years in prison plus three years parole. The sole contention raised by appellants in this appeal is that the District Court[1] erred in refusing to suppress as evidence 368.08 grams (about ¾ths of a pound) of heroin seized in a warrantless search of Griffin's auto shortly after he departed from Regan's residence under surveillance on September 13, 1974. We affirm the judgments of conviction. The District Court did not err in refusing to suppress, as the federal agents had probable cause to effect a warrantless arrest of Griffin and searched his vehicle as an incident of the arrest. There existed probable cause to believe Griffin was committing a crime and the exigencies of his departure from Regan's residence required prompt action.

The circumstances of the arrest were: On the afternoon of September 13, 1974, Special Agent John O'Connor and task force Officer John Boulger of the federal Drug Enforcement Administration (DEA) collaborated in preparing an affidavit for a warrant to search Regan's lakefront suburban home at 2405 Dunwoody Avenue, Navarre, Minnesota, approximately 20 miles west of Minneapolis. At 4:00 p. m. O'Connor and Boulger secured the warrant from the United States Magistrate in downtown Minneapolis. While preparing the affidavit, however, as a protective measure, prior to 2:30 p. m., one of the two agents contacted by radio the team of DEA personnel in Navarre then maintaining surveillance of the Regan home to instruct them that probable cause had finally been acquired to believe Regan was distributing heroin from the house as suspected and that a courier might soon appear. The courier would be a short, white male in his thirties with a reddish mustache and goatee, driving a Ford station wagon. The officers at the scene were informed that a warrant to search the Regan home was being obtained but that if a man of the courier's description should attempt to depart prematurely, he was to be arrested.

Bloomington Police Officer Rodney Nyenhuis, attached to the DEA task force in Navarre, was then stationed down the road from the Regan home. At approximately 3:15 p. m., forty-five minutes before the search warrant was actually issued, Nyenhuis received a radio message from agents watching the house that a person with red hair and goatee had appeared and was leaving in a Ford station wagon. As the station wagon passed, Nyenhuis, identified the driver and car as those described in the radio transmission and followed the vehicle for more than a mile. When joined by two other autos carrying five DEA agents, Nyenhuis stopped the vehicle, arrested the driver, Griffin, and discovered 368.08 grams of heroin in the lining of a motorcycle helmet lying on the front seat.

The five agents had differing justifications for the arrest and search of Griffin. Officer Nyenhuis acted upon orders transmitted to him by radio from O'Connor or Boulger and from one of the observing agents to arrest a man of Griffin's description driving a Ford sta-

---

* The Honorable Robert Van Pelt, United States Senior District Judge for the District of Nebraska, sitting by designation.

1. The Honorable Earl R. Larson, United States District Judge for the District of Minnesota, filed a memorandum opinion and order on February 3, 1975, denying defendants' motions to suppress after a pretrial suppression hearing on December 23 and 24, 1974.

tion wagon away from Regan's home. Nyenhuis was deployed as a member of the surveillance team. Another observing agent, Markus Kryger, later reported that he was purportedly authorized by the United States Attorney to stop anyone departing Regan's home. The remaining officers had varying reasons apparently not on the record. The District Court held, and we agree, that the stop and search were valid if any of the arresting officers had lawful justification for acting regardless of the theories held by others. In assessing probable cause, we take an objective view of all the facts, and the knowledge of all the officers is to be evaluated collectively. *White v. United States,* 448 F.2d 250, 254 (8th Cir. 1971), *cert. denied,* 405 U.S. 926, 92 S.Ct. 974, 30 L.Ed.2d 798 (1972). Knowledge possessed by the superiors of an individual arresting officer may be imputed to him. *United States v. Trabucco,* 424 F.2d 1311, 1315 (5th Cir.), *cert. dismissed,* 399 U.S. 918, 90 S.Ct. 2224, 26 L.Ed.2d 785 (1970).

Officer Nyenhuis' reliance upon the radio command from O'Connor and Boulger to arrest a person of Griffin's description is justified if O'Connor and Boulger themselves possessed sufficient knowledge to afford probable cause for the arrest believing a suspect matching Griffin's description was committing a crime. *Cf. Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). What did O'Connor and Boulger know when they ordered the observing agents to apprehend a man of Griffin's description should he attempt to depart Regan's home? Their knowledge is revealed by the affidavit for the search warrant prepared prior to the arrest and by their testimony in the suppression hearing. The affidavit stated that in the preceding 72 hours a confidential informant, later identified as one Robert Enney had, while on the premises at 2405 Dunwoody, observed a quantity of brown powder that was represented to be heroin by a person known to him as Robert Regan. Enney related this information directly to Boulger but never

spoke with O'Connor. He further stated that in the past he had acquired heroin from Regan at the named address and that Regan was presently using a close associate, the man described above, as a heroin courier. He stated that if the man described above were seen at the Regan home driving the described vehicle, his purpose in being there would be to transport heroin.

The affidavit also recited that Enney had once in the past acquired narcotics in a "controlled buy" for Officer Boulger, and it revealed that most of his story had already been verified by the agents. They had learned that utility and telephone company records for the house were listed in Regan's name; that Regan's description, as reported by observing agents, matched that offered by the informant; that Regan was on parole for a prior federal drug conviction, as reported by the informant; that Regan's auto, as described by the observing agents, matched that described by the informant; and that telephone toll records revealed numerous calls placed from Regan's telephone to Tucson, Arizona, and Nogales, Mexico, during July and August, 1974, corroborating the informant's story that Regan obtained the heroin from Mexico via Tucson. Enney also named two other persons, Sharon Olson and Cheri Maurer, who he claimed were associated with Regan in the heroin trafficking. Telephone toll records revealed that a call was placed from Maurer's Minneapolis residence to Nogales, Mexico, in June, 1974, and Regan's auto was frequently seen by O'Connor and Boulger at her residence during the summer of 1974.

Finally, O'Connor and Boulger stated that they had learned independently through a second confidential informant that Regan was dealing in large quantities of heroin on a continuing basis and that Regan had concealed heroin on the grounds outside his home. This second informant, they stated, was a man "speaking against his penal interests," for the reason that he had concealed Regan's possession of heroin witnessed in

July, 1974. During the suppression hearing, this second informant was identified as codefendant Robert Priebe, a man with whom O'Connor had never spoken. Priebe, however, had taken another DEA agent, John Bloch, to the Regan residence to purchase heroin on two prior occasions in June and July, 1974. On each occasion Priebe, under surveillance, had taken Bloch to Regan's home, carried Bloch's money inside and returned with heroin. Boulger had discussed the two purchases with Bloch and had assisted, as had O'Connor, in observing one of them.

The District Court properly held that Enney's tip satisfied the requirements of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and could be credited by the agents to establish probable cause,[2] noting particularly the agents' awareness of the Priebe-Bloch transactions at Regan's home, Enney's purchase and observation of heroin inside the residence, and Enney's description of the heroin courier, later matched by Griffin. The court found no need to consider whether the informant was also to be credited under the test of detailed prognostication set forth in *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

■■■ Fourth Amendment analysis relating to a magistrate's assessment of hearsay information presented in an application for a search warrant can apply with equal force to an assessment of the basis for a warrantless arrest by police officers. *Whiteley v. Warden*, 401 U.S. 560, 566, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Ultimately, probable cause to arrest depends upon whether:

> [A]t the moment the arrest was made, * * * the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

*Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *United States v. Peep*, 490 F.2d 903, 906 (8th Cir. 1974). Here, as always, we assess probable cause on the basis of cumulative facts from the viewpoint of a reasonably prudent police officer, *United States v. Peep, supra* at 906, acting in the circumstances of the particular case. *Jackson v. United States*, 408 F.2d 1165, 1171 (8th Cir.), *cert. denied*, 396 U.S. 862, 90 S.Ct. 135, 24 L.Ed.2d 114 (1969). In so doing, we remain cognizant that "[t]he rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests"—individual privacy on the one hand, and the practical needs of law enforcement on the other. *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949); see *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

■■■ Having carefully reviewed the record with this principle of practicality in mind, we conclude that the instant arrest[3] and search were justified. To

**2.** *Citing United States v. Buckhanon*, 505 F.2d 1079, 1081 (8th Cir. 1974), *quoting United States v. Peep*, 490 F.2d 903, 906–07 (8th Cir. 1974).

**3.** Our discussion is limited to the arrest, for it is settled that if the initial arrest is justified under Fourth Amendment standards, a search of the person and immediate surroundings incident thereto requires no additional justification and is not limited in scope by reference to the justification for the arrest. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *United States v. Peep*, 490 F.2d 903 (8th Cir. 1974). There has been no claim that Officer Nyenhuis' stop of Griffin was less than a custodial arrest.

Moreover, though neither appellant has sought to differentiate between the search of Griffin's person and that of his car, it is apparent that the same circumstances giving the officers probable cause to stop and arrest Griffin also gave probable cause to search his car for heroin. *Chambers v. Maroney*, 399 U.S. 42, 47–52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Viewed in another light, a helmet located on the front seat was within the area of his immediate control and hence the officers were justified in searching incident to the lawful arrest. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

form an adequate basis for a finding of probable cause, an informant's hearsay tip must reveal (1) some of the underlying circumstances from which the informant concluded that the narcotics were located where he claimed they were, and (2) some of the underlying circumstances from which the officer concluded that the informant was credible and his information reliable. *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Appellants contend that neither element of the two-prong *Aguilar* test was satisfied by Enney's tip because Enney did not reveal the specific source or the means by which he obtained his information, and because the officers did not allege that Enney's information had proved accurate on prior occasions. The record, however, demonstrates to the contrary.

█ Enney's tip satisfied the dual criteria set forth in *Aguilar* and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The first *Aguilar* requirement was satisfied by Enney's actual presence in the Regan home within the preceding 72 hours, wherein he personally observed narcotics and overheard a conversation in which Regan discussed distribution of heroin.[4] Such personal observation of narcotics and overhearing of the defendant discussing the courier were unquestionably circumstances that shed light on the informant's source and satisfied the first of *Aguilar's* requirements. *United States v. Golay*, 502 F.2d 182, 186–87 (8th Cir. 1974); *Cundiff v. United States*, 501 F.2d 188 (8th Cir. 1974).

█ With reference to *Aguilar's* second requirement, the officers pos-

sessed articulable information from which they reasonably concluded that the informant was credible and his information reliable. They verified apparently every component of Enney's story except the ultimate existence of heroin in Regan's premises and in the courier's car. They confirmed the address of the house, the identity of Regan and his prior criminal record, the telephone calls to Mexico and Arizona, Regan's associations with other drug traffickers and, through Enney's previous "controlled buy" for Officer Boulger, the informant's demonstrated willingness to truthfully transmit incriminating information to the Government. While, concededly, Enney had not prior to this occasion produced information leading to an arrest and conviction, that factor alone is not essential under *Aguilar* to establish the informant's reliability. *See McCreary v. Sigler*, 406 F.2d 1264, 1269 (8th Cir.), *cert. denied*, 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969).

Moreover, even if *arguendo* Enney's tip were to be considered insufficient under *Aguilar*, substantial independent corroboration was present to render it as trustworthy as a tip otherwise satisfying *Aguilar's* tests. *United States v. Marihart*, 472 F.2d 809 (8th Cir. 1972), *cert. denied*, 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974); *cf. Spinelli v. United States, supra* at 415–17, 89 S.Ct. 584. As the District Court noted, the Priebe-Bloch transactions gave the officers strong evidence that Regan was distributing heroin on the premises. Statements by the second informant, Robert Priebe, in the form of declarations against his penal interest, were persuasive indicators of their own trustwor-

---

**4.** Agent Boulger testified during the suppression hearing that the informant, later identified as Enney, claimed to have overheard a conversation between Regan and others:

Q. [Mr. Walbran, attorney for the Government]: Did the confidential informant describe the source of his or her knowledge concerning this man with the red goatee?

\* \* \* \* \* \*

In other words, did the informant indicate that this information was gained by a con-

versation or by overhearing or by observation?

A. [Agent Boulger]: The confidential informant advised me that the information was \* \* \* obtained through overhearing a conversation and observation.

\* \* \* \* \* \*

Q. Agent Boulger, who did the informant say was overheard or observed?

A. The name Robert Regan was mentioned.

thiness, *see United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (plurality opinion of Burger, C. J.), and served to corroborate the tip of the principal informant, Robert Enney, that Regan was distributing heroin from his home. *United States v. Smith*, 462 F.2d 456, 460 (8th Cir. 1972).

The objective facts and the verification of all the ascertainable facts set forth in the informant's tip except the actual possession of heroin in Regan's premises clearly established probable cause for Griffin's arrest and the subsequent search of Griffin's car. The use as evidence of the fruits of that search, the heroin, was valid as against both defendants.

The judgments of conviction are affirmed.