**UNITED STATES of America ex rel. William Alton RIGSBEE, Jr., Petitioner,**

v.

**J. D. PARKINSON, Warden, South Dakota Penitentiary, Sioux Falls, South Dakota, Respondent.**

**No. Civ. 75–4072.**

United States District Court, D. South Dakota, S. D.

Feb. 19, 1976.

Keith Strange, Sioux Falls, S. D., for petitioner.

Marc Weber Tobias, Asst. Atty. Gen., Pierre, S. D., for respondent.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

Petitioner has applied for a writ of habeas corpus pursuant to 28 U.S.C. Section 2254 (1970). He presently is confined in the South Dakota Penitentiary by order of the Circuit Court, Third Judicial Circuit, Codington County, South Dakota. A sentence of two years was imposed upon his conviction of possession of marijuana in an amount greater than one ounce.

The circumstances leading to this petition may be briefly summarized. Officer Durham of the Watertown police department received a telephone tip from a confidential informant between 5:00 and 5:30 p. m. on March 16, 1973. The information imparted included (1) that Petitioner had marijuana or a controlled substance in his vehicle, and (2) that Petitioner normally went to the Club 20 between 6:20 and 7:00 p. m. (Suppression Hearing transcript p. 36). Officer Durham also testified " . . . and I had received information that he had been selling out there." Acting on this tip, Officer Durham and Officer Witt undertook surveillance of Petitioner's house. They observed Petitioner leaving his house at approximately 7:10 p. m. After following Petitioner a short distance, the officers observed Petitioner turning onto Highway 20 away from the direction of Club 20.[1] It was at this time that the

---

1. The state court record was inconclusive as to whether the Petitioner, in turning onto Highway 20, turned toward or away from the direction of Club 20. The South Dakota Supreme Court based its opinion in part on the understanding that Officer Durham personally observed the Petitioner "proceeding in the direction of Club 20 at the time he was stopped by the officers." *State v. Rigsbee*, S.D., 233 N.W.2d 312, 314 (1975). The misunderstanding is easily understood in the context of the state court record. However, at an evidentiary hearing held on January 12, 1976, Officer Durham unequivocally testified that Petitioner turned onto Highway 20 away from the direction of Club 20. Petitioner's arrest came while he was proceeding away from Club 20.

officers stopped Petitioner and informed him that there was information which led them to believe that he had marijuana in his vehicle. When asked by Officer Durham if he would consent to a search of his car, Petitioner refused. Officer Durham then advised Petitioner that unless he consented to a search, a search warrant would have to be obtained. Petitioner was then placed in the police vehicle, advised of his "Miranda" rights, and again asked if he would consent to a search of the vehicle. Petitioner again refused and he was subsequently transported to the police station. Petitioner's vehicle was driven to the police station by Officer Durham and parked in the police garage. The evidence is conflicting as to what next transpired at the police station. Officer Durham testified that as Petitioner was exiting from the police car he stated, "You don't need a search warrant, I will get the stuff for you." Petitioner testified that he was taken to an interrogation room and asked to consent to a search of his vehicle and told that "if you don't get the stuff for us, we will get a search warrant and tear your car apart looking for it." Regardless of which version is true, Petitioner was permitted to reach into the glove compartment of his vehicle where he retrieved three bags of "stuff". Following additional questioning Petitioner advised the officers that another bag was located in the rear compartment of the vehicle. This bag was retrieved from the vehicle without Petitioner's assistance, according to Petitioner. Officer Durham testified that the Petitioner also retrieved this bag of "stuff".

A motion to suppress the evidence found in the four bags was denied at a suppression hearing held before trial. Petitioner was convicted in a trial without a jury and the conviction and sentence were affirmed by the South Dakota Supreme Court. *State v. Rigsbee*, S.D., 233 N.W.2d 312 (1975).

## I. NO PROBABLE CAUSE TO ARREST.

Petitioner alleges that the officers had insufficient probable cause to arrest and subsequently search his vehicle. The standard to be applied to the issue of probable cause was enunciated in *United States v. Peep*, 490 F.2d 903, 906–907 (8th Cir. 1974), and expressly reaffirmed in *Kelley v. Swenson*, 510 F.2d 264, 266 (8th Cir. 1975).

> We assess probable cause in terms of the eyes of a reasonably cautious and prudent peace officer in the circumstances of the moment. . . . Probable cause to arrest depends "upon whether, at the moment the arrest was made, * * * the facts and circumstances within (the arresting officers') knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). . . . And in making this assessment we do not isolate for independent analysis each factual circumstance, but rather we view the action of the arresting officers on the basis of the cumulative effect of such facts in the totality of the circumstances. . . . (Citations omitted.)

The facts and circumstances within the knowledge of Officers Durham and Witt were the product of a confidential tip from an unidentified informant. The standard for establishing the trustworthiness of an informer's tip was laid down in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

> Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, *the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant,* whose identity need not be disclosed, see *Rugendorf v. United States,*

376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 *was "credible" or his information "reliable."* 378 U.S. at 114, 84 S.Ct. at 1514 (emphasis added).

This standard has been used to determine if probable cause existed where there was an arrest without a warrant based upon information supplied to a police officer by a confidential informant. *Whitely v. Warden,* 401 U.S. 560, 566, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *United States v. Regan,* 525 F.2d 1121 (8th Cir. 1975).

 Applying the *Aguilar* test to the present case, this Court must examine the sufficiency of the showing made at the suppression hearing of (1) the underlying circumstances showing the credibility of the informer or the reliability of his information, and (2) the underlying circumstances from which the informer reached the conclusions he conveyed in the tip. This Court concludes that the first prong was met. Officer Durham testified that the informant had furnished information to him on previous occasions and that the information had been reliable. The fact that an informant has given previously accurate information may be a sufficient test of his reliability. *United States v. Cummings,* 507 F.2d 324, 328 (8th Cir. 1974), rehearing denied Dec. 18, 1974. The second prong of *Aguilar* was not met because Officer Durham revealed nothing that would indicate the basis for the informer's conclusion that Petitioner had marijuana or a controlled substance in his vehicle. The information conveyed to Officer Durham amounted to a bald conclusion of the informant wholly lacking any detail as to the manner in which the information was gathered. *Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

 Even though a tip is found inadequate under the standard laid down in *Aguilar,* the information may be sufficient to establish probable cause if it is sufficiently detailed, or sufficiently corroborated, to supply as much trustworthiness as does the test in *Aguilar.* *Spinelli* 393 U.S. 410 at 415–417, 89 S.Ct. at 588; *United States v. Marihart,* 472 F.2d 809, 813 (8th Cir. 1972).

In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.

The detail provided by the informant in *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), provides a suitable benchmark. *Spinelli,* 393 U.S. at 416, 89 S.Ct. at 589.

In *Draper,* an informant had reported that the accused had recently taken up abode at a stated address and was peddling narcotics to several addicts. Four days later, the informant told the agent that Draper had gone to Chicago, that he was going to bring back three ounces of heroin, and that he would return to Denver by train on the morning of either the 8th or 9th of September. The informant also gave a detailed description of Draper's physical appearance and the clothing he was wearing, said that Draper would be carrying a tan zipper bag and that Draper habitually walked "real fast." On the morning of the 9th, the agent arrested Draper without a warrant. Justice Whittaker, writing for the majority, commented on the corroboration of such detailed information.

And when, in pursuing that information, he (drug agent) saw a man, having the exact physical attributes and wearing the precise clothing and carrying the tan zipper bag that Hereford (informant) had described, alight from one of the very trains from the very place stated by Hereford and start to walk at a "fast" pace toward the station exit, Marsh (drug agent) had personally verified *every facet* of the information given him by Here-

ford except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with *every other bit of Hereford's information being thus personally verified,* Marsh had "reasonable grounds" to believe that the remaining unverified bit of Hereford's information—that Draper would have the heroin with him—was likewise true. *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). (emphasis added).

The detailed information supplied in *Draper* is in sharp contrast to the scanty information provided by the informant to Officer Durham. The allegation that Petitioner had marijuana or a controlled substance in his vehicle must be discounted when applying the *Draper* standard since the purpose of examining the detail supplied in the tip is to establish the reliability of the allegation of criminal conduct. The informant alleged that Petitioner *normally* went to Club 20 between 6:20 and 7:00 p. m. It is difficult to conceive how an admittedly normal departure from one's home between the time of 6:20 and 7:00 p. m. constitutes *detail* to judge the reliability of an informant's tip. The tip also indicated that the Petitioner normally went to Club 20 following his departure from home. All of the allegations contained in the tip with reference to Petitioner's routine constituted information generally available to anyone in the community familiar with Petitioner's habits.[2] The police did not even wait to corroborate that Petitioner was in fact proceeding to Club 20. The arrest was made on an open highway several miles from Club 20 and at a time when Petitioner was proceeding away from Club 20. In addition to the

above information supplied by the informant to Officer Durham, the Officer also stated that " . . . and I had received information that he had been selling marijuana out there." (Suppression hearing transcript p. 36). This Court views the allegation of "selling marijuana" in the same vein as the allegation that Petitioner had marijuana or a controlled substance in his vehicle. It adds nothing by way of detail to establish the reliability of the tip.

The South Dakota Supreme Court cited the case of *United States v. Cummings,* 507 F.2d 324 (8th Cir. 1974), as support for its holding that the tip contained enough self-verifying detail to allow a magistrate to believe that the informant had firsthand knowledge of the criminal activity of the Petitioner. Discounting any preference accorded searches and seizures under a warrant as was the case in *Cummings,* see *United States v. Watson,* —— U.S. ——, 96 S.Ct. 820, 46 L.Ed.2d 598, 44 U.S.L.W. 4112; *Gerstein v. Pugh,* 420 U.S. 103, 113, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *United States v. Ventresca,* 380 U.S. 102, 106–107, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), there are other distinguishing factors between *Cummings* and the instant case. In *Cummings,* the tip disclosed that (1) slot machines were being transported, (2) gave an estimated value of this equipment, (3) described the truck by color and by rental system, (4) accurately identified the license number of the truck, (5) accurately identified the driver of the vehicle, and (6) *correctly disclosed the destination of the truck. Cummings* at 329. (emphasis added). Police surveillance verified the destination of the truck as well as other allegations included in the tip. The fact that the police obtained a warrant, the detail supplied

---

2. Included in this category is the informant's disclosure that "Rigsbee was in town." Petitioner was a student at Dakota State College in Madison, S. D. The inference from the informant's disclosure is that Petitioner had returned to Watertown from Madison presumably with a supply of marijuana. A college student returning to his home town for a weekend is a very common experience. The

further inference is that Petitioner normally returned to Watertown on weekends. What "detail" this information provides to substantiate the informant's basis of knowledge is not apparent to this Court. Any citizen in Watertown familiar with Petitioner would know that he normally returned to Watertown from Madison on weekends.

in the tip, and the fact that the police verified every facet of the information must be contrasted with the circumstances of the present case. See also, *United States v. Regan,* 525 F.2d 1151 (8th Cir., 1975).

At the suppression hearing, Officer Durham also testified that he had arrested the Petitioner in 1972 on a drug charge. The Petitioner testified that he had entered a plea of guilty to a charge of possession of a controlled substance in an amount less than one ounce in 1972. That conviction and sentence had been vacated by the South Dakota Supreme Court presumably because the statute under which the charge was made had been declared unconstitutional. The issue this Court must address is to what extent Officer Durham's knowledge of Petitioner's background showed that there was probable cause to stop the Petitioner on March 16, 1973. It is clear that the affiant's knowledge of a suspect's reputation may be properly relied upon in assessing the reliability of an informant's tip. *United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). The evidence of reputation, however, is only relevant in showing the reliability of the informant's tip and therefore satisfying the first prong of the *Aguilar* test. See, *United States v. Regan,* 525 F.2d 1151 (8th Cir. 1975). It has no relevance in a determination whether the remaining prong of *Aguilar* has been satisfied.

> And of course reliability of the informant is not by itself sufficient to establish probable cause to search without further underlying circumstances being shown as to how the informant came by his information. *McCreary v. Sigler,* 406 F.2d 1264, 1269 n. 2 (8th Cir. 1969).

The Eighth Circuit Court of Appeals has indicated that it will continue to apply the standards of *Aguilar* and *Spinelli* subsequent to the Supreme Court decision in *Harris. Rice v. Wolff,* 513 F.2d 1280, 1289 (8th Cir. 1975), cert. granted 422 U.S. 1055, 95 S.Ct. 2677, 45 L.Ed.2d 707.

It is clear, therefore, that the standards of *Aguilar* and *Spinelli* have not been met to establish probable cause in the instant case. *Harris* does not detract from this analysis.

> In *Harris,* the affidavit at least met one half of the *Aguilar* test, since it averred that *the informant's tip was derived from personal observation* and therefore was based upon reliable information.
>
> *The significance of the Harris opinion is that it upheld the affidavit even though the trustworthiness of the informant was not shown.* But the *Harris* affidavit contained additional indicia that the informant was reliable: the informant was making an admission against penal interest; the tip was highly detailed, further suggesting personal observation; and the conduct attributed by the informant to the property owner was consistent with the owner's criminal reputation. *Rice v. Wolff,* supra at 1289 n. 5. (emphasis added).

The present case is totally distinguishable from *Harris.* The informant did not advise Officer Durham that he had personally observed marijuana or a controlled substance in Petitioner's vehicle. The tip did not disclose that the informant had personally observed Petitioner selling marijuana or a controlled substance at Club 20. The informant did not make an admission against penal interest. The tip was not highly detailed. The conduct of the Petitioner was not consistent with his criminal reputation. Petitioner's departure from his home was described as *normal* by the informant himself and no police officer testified that Petitioner acted suspiciously or in a manner consistent with a person known by the police as a narcotics peddler.

Based on the entire record before this Court, the police did not have probable cause to arrest the Petitioner on March 16, 1973. The informant's tip failed to indicate how the information was gathered. The informant's tip did not describe Petitioner's criminal activity in

sufficient detail so that the magistrate could know that he was "relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli,* supra, 410 at 416, 89 S.Ct. at 589. The facts and circumstances within the arresting officers' knowledge were not sufficient to warrant a prudent man in believing that the Petitioner had committed or was committing an offense.

## II. SHOULD THE EVIDENCE HAVE BEEN SUPPRESSED

■■■ Subject to only a few specifically established and well-delineated exceptions, searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Respondent has cited *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), as a basis to support the search of Petitioner's vehicle. In view of this Court's determination that the police did not have probable cause to arrest or search, Respondent's reliance is without merit. The exigency of the mobility of the vehicle may be relied upon only if "the search and seizure without a warrant are made upon probable cause. . . ." *Carroll,* supra, 267 U.S. at 149, 45 S.Ct. at 283.

Respondent has also cited *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), for the proposition that once the officers had the right to search the vehicle, the search could be delayed until the vehicle was transported to the police station. In *Chambers,* the Supreme Court stated that the vehicle "could have been searched on the spot when it was stopped *since there was probable cause to search and it was a fleeting target for a search.*" *Chambers,* supra, 399 U.S. at 52, 90 S.Ct. at 1981 (emphasis added). The Court further found that if there was probable cause to search at the time of the stop, the probable-cause factor was still present at

the station house. Given these circumstances, the Court stated:

> For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. *Given probable cause to search,* either course is reasonable under the Fourth Amendment.

*Chambers,* supra, 399 U.S. at 52, 90 S.Ct. at 1981 (emphasis added), and see also, *Brewer v. Wolff,* 529 F.2d 787, No. 75–1294 (8th Cir., filed January 20, 1976). In view of this Court's determination that probable cause did not exist, Chambers is inapposite.

■■■ Respondent's final and most troublesome contention is that Petitioner consented to the search that produced the incriminating evidence. The State bears the burden of showing that consent was freely and voluntarily given. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Voluntariness must be proven by a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *United States v. Matlock,* 415 U.S. 164, 178 n. 14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). In determining whether the State has met its burden, the totality of facts and circumstances surrounding the giving of consent must be examined. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The holding in *Bustamonte* was narrowly tied to the noncustodial search in question there, but the analysis contained therein has been held to have application to cases of custodial search. *United States v. Watson,* —— U.S. ——, 96 S.Ct. 820, 46 L.Ed.2d 598, 44 U.S.L.W. 4112 (1976); *United States v. Gavic,* 520 F.2d 1346, 1351 (8th Cir. 1975).

■■■ The voluntariness with which a consent to search is given is a question of fact to be determined from all the circumstances. *Gavic,* supra at 1351. In considering an application for writ of ha-

beas corpus pursuant to 28 U.S.C. Section 2254, this Court is mandated to presume as correct factual findings made by a State court when evidenced by a written finding, opinion or other reliable and adequate written indicia. A presumption does not arise, however, if it appears that the merits of a factual dispute were not resolved in a State court hearing. 28 U.S.C. Section 2254(d)(1) (1970). The record in the present case shows that although the issue of consent was raised at both the suppression hearing and the trial on the merits in the State court, the trial judge entered no specific findings with reference to the consent issue. Other than a general denial of motions to suppress or exclude evidence recovered from Petitioner's vehicle, the State court judge made only one specific finding.

> That motion is also denied. It is the court's opinion in this case that the police had reasonable basis upon which to make a search in this case. This is not a search that was made incident to arrest. Here is a vehicle that could be moved out of the country immediately. The rules are different for searching an automobile than for searching a residence. (Trial transcript p. 118).

The Supreme Court of South Dakota expressly declined to decide the consent issue since the trial court had made no determination as to whether Petitioner had voluntarily produced the marijuana. *State v. Rigsbee,* S.D., 233 N.W.2d 312, 315 (1975). This Court therefore was not constrained in its fact findings by presumptions of correctness accorded findings of the state court. *Williams v. Brewer,* 509 F.2d 227, 231 (8th Cir. 1975), cert. granted —— U.S. ——, 96 S.Ct. 561, 46 L.Ed.2d 404, 44 U.S.L.W. 3354.

This Court conducted an evidentiary hearing on January 12, 1976. The sole issue before the Court was whether or not Petitioner voluntarily produced the marijuana and "consented" to the seizure of the evidence. If Petitioner did in fact consent to the search, the connection between the illegal arrest and the discovery of the incriminating evidence may have "become so attenuated as to dissipate the taint." *Wong Sun v. United States,* 371 U.S. 471, 491, 83 S.Ct. 407, 419, 9 L.Ed.2d 441 (1963) (citing *Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939)).

 Petitioner was present and testified at the evidentiary hearing. The State of South Dakota called Officer Durham and Deputy State's Attorney Wagner. The Court has considered the evidence submitted at the hearing and enters these findings of fact:

1. On March 16, 1973, Petitioner was nineteen years of age, a high school graduate, and nearing completion of one year of college at Dakota State College, Madison, S. D. On the evening of March 16, 1973, Petitioner was not under the influence of drugs or alcohol.

2. Immediately after being stopped by the police on March 16, 1973, Petitioner was advised by Officer Durham that there was reason to believe that Petitioner had a controlled substance in his vehicle and permission requested to search the vehicle. Petitioner refused to give permission. Petitioner's refusal to permit a search is probative evidence that Petitioner was fully aware of his right to refuse consent. Petitioner was not expressly advised that he had a right to refuse consent.[3]

3. After Petitioner refused consent, he was taken into custody and placed in the police car, advised of his constitutional "Miranda" rights,

---

**3.** While the State need not prove that the suspect was advised of his right to refuse consent in order to establish that consent was freely and voluntarily given, the suspect's knowledge of a right to refuse is a factor to be taken into account. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

and again asked to consent to a search of his vehicle.[4] Petitioner again refused consent.

4. Officer Durham advised Petitioner on at least one occasion that if Petitioner did not consent to a search, a search warrant would be obtained in order to search Petitioner's vehicle.[5]

5. Petitioner consented to Officer Durham's request that he be allowed to drive Petitioner's car to the Watertown Police Station.

6. Upon arriving at the Watertown Police Station, Petitioner received the keys to his vehicle from Officer Durham, opened the glove compartment of the vehicle, and produced three bags of marijuana.

7. Following production of the three bags, Petitioner was placed in an interrogation room at the Police Station. For approximately one hour, Petitioner engaged in informal discussion with various police officers. Such discussions at no time reached a level of intense police interrogation by one or more police officers.

8. Between 8:30 and 9:00 p. m., Petitioner was again advised of his constitutional "Miranda" rights by Deputy State's Attorney Wagner. Shortly thereafter, Petitioner accompanied officers back to the police garage where he produced a brown paper bag from the rear compartment of the vehicle. This bag also contained marijuana.

9. From the time of the initial stop by the police until the time the second amount of marijuana was produced, Petitioner was never physically abused or threatened, was never handcuffed or similarly restrained, was never threatened with physical injury to his property.[6] No police officer ever approached Petitioner with weapon drawn or pointed in the direction of Petitioner.

10. Petitioner never indicated that he did not wish to answer questions or make any statements. Petitioner never requested that an attorney be contacted.[7]

11. Petitioner was not a newcomer to the law and was familiar with police procedure and the criminal justice process.

■ Having examined the totality of facts and circumstances surrounding the production of the marijuana, this Court finds that Petitioner freely and voluntarily consented to the production of the evidence. It could be argued that the police were going to search Petitioner's vehicle whether or not he consented. In this sense, consent to the inevitable may be considered as inherently coercive.

---

4. Miranda warnings, by themselves, do not always purge the taint of an illegal arrest. *Brown v. Illinois,* 422 U.S. 590, 605, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The presence or absence of Miranda warnings is only one factor to be considered, albeit an important factor. *Brown,* supra, 422 U.S. at 603, 95 S.Ct. 2254.

5. A search conducted in reliance upon a non-existent or invalid warrant cannot later be justified on the basis of consent. Such a situation is instinct with coercion. *Bumper v. North Carolina,* 391 U.S. 543, 549–50, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Bumper is distinguishable from the present case where Officer Durham indicated that a warrant would be obtained if Petitioner did not consent to the search. See, *United States v. Faruolo,* 506 F.2d 490, 493–94 (2nd Cir. 1974); *United States v. Culp,* 472 F.2d 459, 461 (8th Cir. 1973), cert. denied 411 U.S. 970, 93 S.Ct. 2161, 36 L.Ed.2d 692.

6. At the suppression hearing held on July 17, 1973, Petitioner had testified that police officers threatened to "tear the car apart" unless Petitioner consented to a search of his vehicle. This allegation was not supported by the Petitioner's testimony at the evidentiary hearing held on January 12, 1976.

7. The record discloses that an attorney did appear at the police station on the evening of March 16, 1973. This attorney had represented Petitioner previously. What participation if any this attorney had during the course of the evening is not disclosed by the record. It is certain, however, that the attorney did not appear at the request of the Petitioner.

Under the facts of this case, however, the Court is convinced that Petitioner surrendered a known right of which he was fully cognizant. See, *Santos v. Bayley,* 400 F.Supp. 784, 791 (M.D.Pa.1975). Petitioner actively assisted in the search of the vehicle. See, *United States v. Menke,* 468 F.2d 20, 24 (3rd Cir. 1972); *Santos,* supra at 792. Petitioner's prior refusals of consent indicate that he was fully aware of his right to refuse consent. While the time interval between the illegal arrest and the consent is relatively short, other factors preponderate to indicate the intervention of a voluntary act of consent within a short lapse of time. *Santos,* supra at 794.

It is the holding of the Court that the marijuana was obtained as a result of consent freely and voluntarily given by Petitioner. This consent was an intervening act of a free will sufficient to purge the primary taint of the unlawful invasion and the marijuana should not have been excluded. See, *Wong Sun,* supra, 371 U.S. at 488, 83 S.Ct. 407; *Brown v. Illinois,* 422 U.S. 590, 605, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Petitioner's custody not being in violation of the Constitution, laws or treaties of the United States, the application for writ of habeas corpus is denied. Counsel for Respondent will prepare an appropriate order.