UNITED STATES of America, Appellee,

v.

Norman L. MATTHEWS, Appellant.

No. 79–1155.

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1979.

Decided Aug. 6, 1979.

Hugh C. Roberts, Jr., Farmington, Mo., argued and filed brief for appellant.

Michael W. Reap, Asst. U. S. Atty., St. Louis, Mo., argued; Robert D. Kingsland, U. S. Atty., and Frederick R. Buckles, Asst. U. S. Atty., St. Louis, Mo., on brief for appellee.

Before HEANEY and STEPHENSON, Circuit Judges, and MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.

HEANEY, Circuit Judge.

Norman L. Matthews appeals from his conviction of bank robbery in violation of 18 U.S.C. § 2113(a) and (d). He argues that the trial court erred in giving its aiding and abetting instruction, in admitting evidence seized from his person at the time of his arrest, in admitting other evidence seized during a search of his house and automobiles, and in denying his motion to compel an FBI agent to be interviewed by defense counsel. We affirm.

On November 13, 1978, the Mercantile Bank of Farmington was robbed. The robber fled in a stolen automobile which was later abandoned four or five miles from the bank. Three days later, Matthews was questioned at his residence about his activities before and after the time of the robbery. He was then arrested and searched.

* HOWARD T. MARKEY, Chief Judge, United States Court of Customs and Patent Appeals, Washington, D. C., sitting by designation.

His house and automobiles were also searched.

Matthews argues, initially, that the trial court erred in giving its aiding and abetting instruction. He contends that the instruction created an "impermissible risk" that the jury did not find that every element of the offense had been proved beyond a reasonable doubt. The trial court gave the following instruction which is taken substantially verbatim from 1 E. DEVITT and C. BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 12.01 (3d ed. 1977): [1]

> The guilt of a defendant may be established without proof that the accused personally did every act constituting the offense charged.
>
> Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> Whoever willfully causes an act to be done, which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
>
> In other words, every person who willfully participates in the commission of a crime may be found to be guilty of that offense.

■ This Court has previously considered and rejected similar claims. *See Sewell v. United States,* 406 F.2d 1289, 1293 (8th Cir. 1969). Moreover, when reviewing instructions, we must examine them in their entirety. *See, e. g., United States v. Rotchford,* 575 F.2d 166, 174 (8th Cir. 1978); *United States v. Kershman,* 555 F.2d 198, 201 (8th Cir.), *cert. denied,* 434 U.S. 892, 98 S.Ct. 268, 54 L.Ed.2d 178 (1977); *United States v. DeCoteau,* 516 F.2d 16, 17 (8th Cir. 1975). The instruction immediately preceding the aiding and abetting instruction states:

> The essential elements which are required to be proved in order to establish the offense charged in the indictment are as follows:
>
> *First*: The act or acts of taking from the person or presence of another any property, money, or any other thing of value belonging to or in the care, custody, control, management or possession of a bank, as charged;
>
> *Second*: The act or acts of taking such property, money or thing of value was by force, violence, or by means of intimidation;
>
> *Third*: The act or acts of assaulting, or of putting in jeopardy the life of any person by the use of a dangerous weapon or device, while stealing property, money, or other thing of value from the bank, as charged;
>
> *Fourth*: The doing of such act or acts willfully; and
>
> *Fifth*: That the deposits of the Mercantile Bank of Farmington, Leadington Facility, Leadington, Missouri, were insured by the Federal Deposit Insurance Corporation at the time of the offense alleged in the indictment.

We conclude that when the instructions are viewed as a whole, they adequately advise the jury that it must find that each essential element of the offense has been proved beyond a reasonable doubt.[2]

■ Matthews argues next that the evidence seized from his person at the time of the arrest should have been suppressed. After he was questioned, Matthews was placed under arrest and patted down while seated in a police car. A camera was removed from his coat pocket and currency was seized from his billfold. It was later shown that the camera belonged to the owner of the stolen getaway car. The issue before this Court is whether, at the time of Matthews' arrest, the officers had knowledge of sufficient facts and circumstances to give them probable cause to believe that Matthews had committed the bank robbery.

---

1. The instruction was given because the evidence showed that the getaway car was occupied by two individuals, both wearing ski masks and plaid shirts.

2. Matthews did not propose an alternative aiding and abetting instruction. *See United States v. Sanborn,* 563 F.2d 488 (1st Cir. 1977).

If so, the arrest was lawful although made without a warrant.[3] Probable cause for a warrantless arrest depends upon

> whether, at the moment the arrest was made, * * * the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.

*Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225 (1964). *See also United States v. Neumann,* 585 F.2d 355 (8th Cir. 1978); *United States v. Wood,* 545 F.2d 1124 (8th Cir. 1976), *cert. denied,* 429 U.S. 1098, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977); *United States v. Regan,* 525 F.2d 1151 (8th Cir. 1975); *United States v. Peep,* 490 F.2d 903 (8th Cir. 1974).

■ Matthews points to certain facts and urges no one fact alone sufficiently establishes probable cause. We have previously recognized that it is the cumulative effect of all the facts and circumstances at the time of the arrest which determines probable cause. *United States v. Neumann, supra; United States v. Wood, supra; United States v. Peep, supra.* We conclude that the cumulative effect of all the evidence in the record discloses that probable cause for the arrest existed.

The record reveals that the robber was described as six feet or taller, with a medium build and light grey eyes. He was said to be wearing blue jeans, a plaid shirt and a ski mask.

Between Matthews' house and the location of the abandoned car was a shallow stream and a state highway. On the day of the robbery, five persons who knew Matthews saw him running across that highway. They described him as looking excited and scared, with a red and scratched face and wearing blue jeans wet to the knees.

A surveillance photograph showing the robber was taken by the bank. The sheriff, who had employed Matthews as a deputy until five months before the robbery, believed the photograph showed eyes, nose and chin shapes similar to those of Matthews. A deputy sheriff stated that the pistol in the photograph was similar to the gun he had previously sold Matthews. Also, a person called the sheriff and stated that the subject in the photograph appeared to be Matthews.

Matthews had also questioned the local police about the progress of the investigation and was said to have shown an unusual interest in its course. This information was given to the sheriff by a police officer who did not know that Matthews was a possible suspect.

■ Once a suspect has been lawfully arrested, the police may constitutionally search the person without a warrant to discover weapons or to prevent the loss or destruction of evidence. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). *See also United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). After Matthews was lawfully arrested, it was permissible to search his person and seize the camera and the money. Thus, the trial court did not err in refusing to suppress this evidence.

Matthews next argues that the evidence seized from his residence and automobiles should have been suppressed because his consent to their search was involuntary. The items seized during the search included a pistol, blue jeans, a shirt, boots, a pillowcase and currency.

■ A search conducted with valid consent does not violate the Fourth Amendment. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The government has the burden to establish that Matthews' consent was freely and voluntarily given and not the result of duress or coercion. *United States v. Frazier,* 560

---

**3.** Obtaining an arrest warrant is to be encouraged, although it is not mandatory when probable cause exists. *See Gerstein v. Pugh,* 420 U.S. 103, 113, 95 S.Ct. 854, 43 L.Ed.2d 54

(1975); *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

F.2d 884 (8th Cir. 1977), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978). *See also Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). This is a fact question which we must determine from the totality of all the circumstances. *Schneckloth v. Bustamonte, supra.*

Matthews was interviewed by three police officers in a car in front of his house. He was given a *Miranda* warning, which he read and declared he understood. Matthews then stated that he was the one who usually advised people of their rights. During the questioning, Matthews refused to consent to a search of his house and automobiles. The police asked Matthews about his activities at the time of the robbery. He was thereupon arrested, patted down and advised of his rights. Matthews, without responding to any questions, then stated that he would consent to a search of his home and automobiles and signed a form to that effect.

Matthews contends that the arrest, pat down and warnings created an inherently coercive situation. Custody alone, however, has never been sufficient to show that consent to a search is the result of coercion. *United States v. Watson,* 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 416 (1976). This Court has held that the fact that a suspect is under arrest or in jail will not, standing by itself, preclude the grant of free and voluntary consent. *United States v. Frye,* 548 F.2d 765, 770 (8th Cir. 1977); *United States v. Frazier, supra* at 889.

 The trial court found that Matthews had substantial knowledge of his constitutional rights, apparently based on his work as a deputy sheriff. A suspect's knowledge of his right to refuse to consent to a search is another factor considered by a court in reviewing the voluntary consent question. *Schneckloth v. Bustamonte, supra* 412 U.S. at 248–249, 93 S.Ct. 2041. The *Miranda* warning given Matthews is an additional factor indicating that his consent was freely given. *See United States v. Lemon,* 550 F.2d 467, 472 n.5 (9th Cir. 1977).

 Considering the totality of the circumstances, we conclude that Matthews' consent to a search was freely and voluntarily given.

 Matthews finally argues that the trial court erred in denying his motion to compel an FBI agent to be interviewed by defense counsel. The FBI agent refused to disclose details of his investigation of the robbery to defense counsel when counsel requested an interview. Matthews claims that because the agent stated that his refusal to be interviewed was a matter of "Bureau policy" that the government interfered with his right to conduct an investigation thereby depriving him of due process of law.[4] We believe that this claim presents a serious issue. We need not reach it, however, in view of the agent's testimony during a hearing on Matthews' pretrial motions. At that hearing, the agent was extensively examined by defense counsel concerning his investigation of the robbery. A review of the agent's testimony at trial reveals that he disclosed substantially all the relevant information he possessed at the pretrial hearing. Thus, the defense counsel did have an opportunity to examine the agent prior to trial to obtain the requested information.

The judgment is affirmed.

---

4. Matthews was provided with all Jencks Act material, *Brady* material and other materials required by the Federal Rules of Criminal Procedure.