[No. 1502-3.    Division Three.    January 28, 1976.]

THE STATE OF WASHINGTON, *Appellant*, v. TIMOTHY GENE SLOUGHTER, *Respondent*.

*Donald C. Brockett, Prosecuting Attorney*, for appellant.

*Richard L. Cease* of *Spokane County Public Defender*, for respondent.

GREEN, J.—Defendant was charged with the possession of a controlled substance—cocaine. Thereafter, the court granted defendant's motion to suppress the evidence and dismissed the charge. Plaintiff appeals.

The circumstances giving rise to the charge are contained in the affidavits of Michael V. Harvey, a drug enforcement officer, and the defendant. These affidavits are set out in full, as follows:

Mr. Harvey's Affidavit

[T]hat on January 10, 1975, a search warrant was executed at 1716 North Walnut at approximately 10:00 P.M.; that this address was known to me to be the home of LARRY SETTER, also known as TERRY O. SCHOULTZ; that on January 8, 1975, a confidential informant in my employ purchased two glass bottles of hash oil from Larry Setter for $220.00 at the Red Lion Tavern; that on January 9, 1975, the aforementioned informant and Special Agent

Anthony Flores met at the Red Lion Tavern with Larry Setter and purchased four glass bottles of hash oil for $360.00; that on January 10, 1975, my informant and Special Agent Flores met Setter at his residence, 1716 North Walnut, for the purpose of purchasing additional hash oil from Setter; that Agent Flores and my informant left the residence at 7:00 P.M., indicating to me that Setter told them to return at 9:00 P.M., at which time the drugs should have been delivered by a person known only to Setter; that Agent Flores and the informant returned to 1716 North Walnut at 9:30 P.M.; that Agent Flores exited the house, informing me that Setter was in possession of the hash oil; that the search warrant was then served on the residence by members of my surveillance team and myself; that upon entering the living room of the residence at 1716 North Walnut, Larry Setter and Timothy G. Sloughter were facing me; that one of my Special Agents announced that we were Federal Officers; that I identified myself with a badge I carry on my person; that defendant Sloughter was wearing a jeans jacket; that I felt the appropriate action was to frisk Timothy Sloughter for weapons, based on: (1) my knowledge that a crime was being committed in the residence where a controlled substance had just been mentioned by a large quantity dealer; (2) my knowledge that the drugs were to be delivered to Setter by an unknown person; (3) my knowledge that large amounts of money had changed hands on the previous two nights between Setter and my Agents; (4) my experience in finding approximately 15% to 20% of all persons I arrest for drug-related offenses armed with some type of weapon capable of producing bodily harm, such as a gun, a knife, or a razor blade; (5) and the fact that Timothy Sloughter was seated next to Larry Setter when the officers arrived at the residence; that the sole purpose of my pat-down search of Timothy Sloughter was to locate and neutralize any weapons on Mr. Sloughter for my own safety and the safety of my officers; that no inquiries were made of Mr. Sloughter because of the knowledge I had at the time of the service of the search warrant on the residence concerning the drug-related activities taking place therein, inasmuch as any inquiries made to Mr. Sloughter would have been futile and may have violated his Fifth Amendment right to remain silent; that upon patting down the outer clothing of the defendant I felt a hard

object in the left coat pocket, approximately three by five inches, and suspected that it was a weapon; that I pulled the object out of the pocket, and it opened up, revealing what I knew in my experience to be a cocaine kit; that Mr. Sloughter was wearing the jacket at the time of the search.

Defendant's Affidavit

[T]hat on January 10, 1975 at approximately 11:00 p.m., I was visiting a friend, Larry Setter, at his residence; that his address is 1716 North Walnut, Spokane, Washington; that Mr. Setter and I were about to leave to go to a tavern; that I had been at his house approximately one-half hour when narcotics agents arrived with a search warrant; that five or six agents entered the house with guns drawn and ordered myself, Mr. Setter and another individual, Mark Hendrickson, not to move or "our heads would be blown off"; that several of the agents proceeded to search the house; that one agent grabbed me, placed me against the wall and searched me; that the search included emptying my pockets; that he then asked if the jacket I was sitting on was mine; that I answered in the affirmative and he then proceeded to search my jacket; that found in the jacket was the evidence which is the subject of this motion; that I did not reside in or have any connection with the residence located at 1716 North Walnut; that I was arrested and booked into jail.

The trial court, relying solely upon these affidavits, suppressed the evidence and stated:

[T]his court finding that Agent Harvey's actions in conducting *a limited search of defendant's outer clothing* at the time a search warrant was served on the residence wherein the defendant was located *was unreasonable because Agent Harvey had no reason to suspect* that the defendant may have been armed and presently dangerous; therefore, the evidence is suppressed and the matter is dismissed.

(Italics ours.) Whether the search of defendant was reasonable under the Fourth Amendment presents the sole issue on appeal. We find the search reasonable and reverse.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and

effects, against *unreasonable* searches and seizures shall not be violated . . ." (Italics ours.) U.S. Const. amend. 4. In *Terry v. Ohio*, 392 U.S. 1, 27, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), the court, upholding a search incident to an on-the-street stop for investigation, balanced the necessity to neutralize the danger to an investigating officer against the sanctity of the individual and concluded:

> [T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; *the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. . . .* And *in determining whether the officer acted reasonably* in such circumstances, *due weight must be given,* not to his inchoate and unparticularized suspicion or "hunch," but *to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.*

(Italics ours. Citations omitted.) Observing that it was concerned with more than the government's interest in investigating crime, the court said at pages 23-24:

> [T]here is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.

(Footnote omitted.) Consequently,

> When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or

to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

Justice Harlan concurred with these comments but added that the limited frisk incident to a lawful stop must often be rapid and routine, and at page 33 said:

There is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet.

In *United States ex rel. Richardson v. Rundle*, 461 F.2d 860, 864 (3d Cir. 1972), this observation was stated another way:

When making inquiry of a suspected robber a frisk was more appropriate than a debate.

On several occasions, this court has applied the underlying principles of *Terry* to persons found on premises being searched under a lawful warrant: *State v. Pristell*, 3 Wn. App. 962, 478 P.2d 743 (1970); *State v. Howard*, 7 Wn. App. 668, 502 P.2d 1043 (1972); *State v. Galloway*, 14 Wn. App. 200, 540 P.2d 444 (1975). In *Pristell*, the defendant was found lying on a sofa while partially covered by a black coat. Narcotic paraphernalia was openly present in the room. The coat was removed in a search for weapons and drugs were found. In *Howard*, while officers were conducting a lawful search of a residence, the defendant arrived in his car. The officer recognized the defendant and when he approached the car observed a small cellophane packet lying on the floorboard. This led to a further search of the car and its occupants and drugs were discovered. In *Galloway*, defendant entered an apartment which was the subject of a lawful search. The officers questioned the defendant and he appeared nervous and kept his hands in his pocket. A pat-down search was conducted revealing amphetamines. In all of these cases the search was upheld.

The defendant argues that each of these cases involved suspicious conduct on the part of the one subjected to the

pat-down search; whereas, in the instant case, as the trial court found from the affidavits, there was no reason to suspect that the defendant may have been armed and presently dangerous. We disagree.

The facts revealed in the affidavits indicate to this court that the situation was pregnant with circumstances giving rise to a reasonable belief that weapons might be present on the person of the defendant. Immediately prior to the search, the officers knew that drugs had been delivered to Mr. Setter at the residence by someone unknown to them. When the officers entered the residence pursuant to the warrant, the defendant was next to Mr. Setter. The pat-down search or frisk of the defendant was based upon Mr. Harvey's knowledge that (1) a crime was actually being committed in the residence; (2) drugs had been delivered to Setter by an unknown person; (3) large amounts of money had changed hands on two previous nights between Setter and his agents; and (4) fifteen to 20 percent of all persons that he arrested for drug-related offenses in the past were armed with some type of weapon capable of producing bodily harm, such as a gun, knife, or razor blade.

It is apparent that the defendant may have been the unknown person who delivered the drugs or was otherwise connected directly with the sale and delivery. Under the circumstances described in the affidavit and in light of the officer's experience, was it unreasonable to search the defendant for weapons? We think not.

The concern of the court in *Terry* for the protection of an officer in the lawful performance of his duties is even more pertinent today. Since that decision, it is a matter of common knowledge that the incidence of armed violence has dramatically increased. This is not surprising in view of the virtually unchecked accessibility and use of all types of deadly weapons. To require an officer, in the circumstances of this case, to await some furtive movement of the defendant before a protective pat-down search for weapons could take place would compound the officer's exposure to danger.

Thus, we hold that the search was reasonable and the trial court erred by granting defendant's motion to suppress and dismissing the charge.

Reversed.

McINTURFF, C.J., and MUNSON, J., concur.

Petition for rehearing denied March 3, 1976.

Review denied by Supreme Court May 25, 1976.