UNITED STATES of America, Appellee,

v.

Bradley Raymond NEUMANN, Appellant.

No. 78–1383.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1978.

Decided Oct. 16, 1978.

William J. Mauzy, Minneapolis, Minn., for appellant.

Joseph T. Walbran, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Andrew W. Danielson, U. S. Atty., and Thorwald H. Anderson, Asst. U. S. Atty., Minneapolis, Minn., on brief.

---

\* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

Before ROSS, Circuit Judge, MARKEY, Chief Judge,\* and HENLEY, Circuit Judge.

HENLEY, Circuit Judge.

Appellant, Bradley Raymond Neumann, was indicted for possessing heroin and demerol with intent to deliver in violation of 21 U.S.C. § 841(a)(1). After a jury trial, he was acquitted of these offenses but was convicted of the lesser included offenses of possessing these substances in violation of 21 U.S.C. § 844. The district court [1] sentenced him to a one-year term of imprisonment for having possessed each drug with the two sentences to run concurrently. Neumann appeals alleging his warrantless arrest was made without probable cause and that the warrantless post-arrest search of his automobile was improper. We affirm.

## I.

The facts are essentially undisputed.

On November 3, 1977 Bradley Neumann and his wife, Sandy, were stopped by police officers, taken from their automobile and arrested shortly after leaving a Minneapolis duplex. This duplex had been placed under surveillance by local police and federal drug enforcement officers earlier that day because an officer had made purchases of heroin and demerol from Ms. Roberta Davis who had taken him to the duplex on three separate occasions to obtain the purchased drugs. Ms. Davis had identified her source as "Sandy," a woman later identified as Ms. Neumann.

On the afternoon of the Neumanns' arrest, Minneapolis police officer Strauss and an informant named Rassmusen went to the duplex to attempt another purchase. Rassmusen had participated in the earlier transactions with Ms. Davis and now sought to make an independent purchase from her source. Strauss remained in his automobile

---

1. The Honorable Harry H. MacLaughlin, United States District Judge, District of Minnesota.

while Rassmusen entered the dwelling. He returned in about ten minutes and reported witnessing a woman named Sandy bagging what be believed to be an ounce of heroin. He also told of watching a man named Brad preparing heroin for injection and of seeing "a box of pills in there." He had agreed to purchase a quarter ounce of heroin from Sandy and had returned to the car to obtain the purchase money. The sellers were, of course, the Neumanns.

Strauss gave one hundred dollars to Rassmusen for a down payment on the heroin until he could obtain the balance of the seven hundred dollar purchase price. Rassmusen again entered the duplex and upon returning reported that Sandy had "become nervous" upon receiving the money. The two men then left the area for about fifteen minutes to obtain the additional six hundred dollars.

When they returned, Rassmusen entered the duplex with the money. As he went in the front door, the Neumanns left through the rear door and drove away in their automobile. Officer Strauss observed two persons leaving the building, and took down a description of their vehicle. One of the individuals was carrying a cardboard box. Rassmusen learned of the Neumanns' departure from the owner of the duplex, Vickie Dowdie, who told him that they had taken a quantity of drugs with them because they had become "paranoid." She also alleged that the Neumanns had stolen some heroin from her.

With this information Rassmusen returned to Strauss who radioed a surveillance vehicle and instructed the officers to stop and arrest the Neumanns. Rassmusen then proceeded to purchase heroin from Ms. Dowdie.

The Neumann car was stopped a few minutes later by several police officers. Both of the Neumanns were quickly removed from the car and arrested. As Sandy Neumann stepped out of the car, she dropped a small packet of heroin on the ground. Three more packets were found in her mouth, and a fifth was later discovered in the rear of a police car used to transport her to the police station.

After both of the Neumanns were removed from their car and handcuffed, the arresting officers conducted a search of the vehicle. The lid was removed from a closed Dayton's Department Store box which was sitting on the floor of the driver's side; and the officers discovered that it contained numerous baggies of pills, some of which were later identified as demerol. The lid of the box was replaced, and the car was then driven to the Minneapolis police garage for a full inventory search.

The arresting officers had not obtained either an arrest or a search warrant prior to stopping the Neumann vehicle, nor was one obtained before conducting the inventory search at the police garage.

## II.

Appellant Neumann first asserts that his warrantless arrest was made without probable cause. This contention is without merit.

 Probable cause for a warrantless arrest hinges upon

> [w]hether, at the moment the arrest was made, . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense.

*Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

In determining whether probable cause existed, we look to the "objective facts available for consideration by the agencies or officers participating in the arrest," *i. e.,* the collective knowledge of the arresting officers. *United States v. Stratton,* 453 F.2d 36, 37 (8th Cir.) *cert. denied,* 405 U.S. 1069, 92 S.Ct. 1515, 31 L.Ed.2d 800 (1972). And where, as in this case, the officers' collective knowledge is largely based on the tip of an informant, we refer to additional guidelines.

> To form an adequate basis for a finding of probable cause, an informant's hearsay

tip must reveal (1) some of the underlying circumstances from which the informant concluded that the narcotics were located where he claimed they were, and (2) some of the underlying circumstances from which the officer concluded that the informant was credible and his information reliable.

United States v. Regan, 525 F.2d 1151, 1155–56 (8th Cir. 1975), citing Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

Neumann's argument here is that neither prong of Regan was met in this case because Officer Strauss' information concerning the whereabouts of the allegedly missing heroin did not come from Rassmusen, an informant of unquestioned reliability, but instead from the uncorroborated statements of Vickie Dowdie, a drug dealer with no previous history of reliability. The facts belie this assertion.

█ We have stated that it is the cumulative effect of the evidence at the time of the arrest which determines probable cause. United States v. Peep, 490 F.2d 903, 906–07 (8th Cir. 1974). In this case the arresting officers had information concerning the possession of drugs by the Neumanns from their own observations and those of Rassmusen. When this information is combined with the statements of Ms. Dowdie, the total evidence clearly satisfies the Regan test. An officer had purchased drugs from Ms. Davis outside of the duplex where the Neumanns were first observed and had been informed by her that her source was a person named Sandy. Rassmusen had witnessed Sandy packaging heroin and had given her one hundred dollars toward the purchase price of a quarter ounce of the drug. Sandy had "seemed nervous" when Rassmusen gave her this money, and only a short time later a woman was seen leaving the rear of the duplex by Officer Strauss as Rassmusen entered the front with the balance of the purchase money. Only then did Ms. Dowdie's statement that the Neumanns had left with the drugs come into play in determining probable cause. Additionally, Ms. Dowdie's state-

ment concerning the whereabouts of the heroin possessed indicia of reliability since her conclusion was corroborated by other facts; her statement was made against her penal interest, United States v. Carmichael, 489 F.2d 983, 986 (7th Cir. 1973); and she was a participant with the Neumanns in the crime of possessing controlled substances, United States v. Rueda, 549 F.2d 865, 869 (2d Cir. 1977). In short, the arresting officers, properly relying on the instructions of Officer Strauss, had every reason to believe that the Neumanns had heroin in their possession at the time of the arrest.

## III.

Appellant's second and final contention is that the warrantless, post-arrest search of the department store box found in his car violated his fourth amendment right to be free from unreasonable searches and seizures. He relies primarily on the Supreme Court's opinion in United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), which required the suppression of evidence seized from a locked footlocker sitting in the open trunk of a parked car because the arresting officers had failed to obtain a search warrant before opening it. The Court reached this determination even though there was probable cause to believe that the footlocker contained a controlled substance. It also rejected the government's assertions that the facts of the case brought the search within the "automobile exception" to the search warrant requirement, Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), or, in the alternative, that the search was made incident to a valid arrest, Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Instead, the Court found that

[b]y placing personal effects inside a double-locked footlocker, [the defendants] manifested an expectation that the contents would remain free from public examination. . . . There being no exigency, it was unreasonable for the Government to conduct this search without the safeguards a judicial warrant provides.

*United States v. Chadwick, supra,* 433 U.S. at 11, 97 S.Ct. at 2483.

Recent cases in this circuit have considered and applied the holding in *Chadwick.* In *United States v. Schleis,* 582 F.2d 1166 (8th Cir. 1978), this court, sitting *en banc,* held that *Chadwick* required a warrant for an "on the scene" search of a locked briefcase taken from the hands of the defendant after he had been arrested for possessing drugs found on his person. We noted in *Schleis* that the fourth amendment warrant clause has long been subject "to a few specifically established and well-delineated exceptions," *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967), and we did not read *Chadwick* as representing "a departure from such a longstanding approach." *United States v. Schleis, supra,* 582 F.2d at 1170. But we found the *Chadwick* warrant requirement had been triggered in *Schleis,* and in the circumstances of that case the search of the briefcase could not be justified as incident to a valid arrest, nor was it permissible under *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1975), which permitted a post-arrest search of the arrestee's clothing or under *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), which provides for valid warrantless police inventory searches.

A similar result was reached in *United States v. Stevie,* No. 77–1335, 582 F.2d 1175 and its companion case, *United States v. Reynolds,* No. 77–1424, 582 F.2d 1175 (8th Cir. Aug. 15, 1978). In those cases heard *en banc,* we again stated that *Chadwick* did not circumscribe the established exceptions to the warrant requirement but refused to uphold the warrantless search of a locked suitcase taken from the back of a station wagon after the automobile had been stopped by police on the highway and its occupants placed under arrest. A consideration of the facts in *Stevie* led us to the conclusion that the search was not made incident to a valid arrest and that it did not come within the automobile exception to the warrant requirement.[2]

As the above cases demonstrate, our task here is a familiar one. We must review the facts before us to determine whether *this* warrantless search was justified under one of the narrow, well-defined exceptions to the search warrant requirement, keeping in mind the limitations placed on these exceptions by the Supreme Court in *Chadwick.* Such searches are presumptively invalid, and the burden is on the government to establish the existence of circumstances making the warrantless search imperative. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Kelly,* 547 F.2d 82 (8th Cir. 1977).

We first note that the search in this case cannot be justified as incident to a valid arrest. In order to come within this exception,

> *Chadwick* establishes that the critical factor is the extent to which the property is within the control of the law enforcement officers, rather than the amount of time or space between the arrest and the search. Once the officers obtain exclusive control, the requirement for a warrant under *Chadwick* is triggered. Ordinarily, the initial seizure at the time of arrest would be sufficient to place the property within the officers' exclusive control.

*United States v. Schleis, supra,* 582 F.2d at 1172 (citations omitted).

---

**2.** *Cf. United States v. Haley,* 581 F.2d 723 (8th Cir. 1978), where we upheld the warrantless search of a zippered leather briefcase taken from the front seat of an automobile. Exigent circumstances justified this search. Police officers found the owner of the car lying in the street in an apparently drugged condition and searched the briefcase in an attempt to obtain personal identification, medical alert cards, etc. *See also United States v. Matlock,* 558 F.2d 1328, 1330–31 (8th Cir.), *cert denied,* 434 U.S. 872, 98 S.Ct. 218, 54 L.Ed.2d 152 (1977), where this court upheld as justified under the circumstances the search of a briefcase in the immediate control of the wife and daughter of the arrestee. The briefcase had been opened by these persons and arresting officers could not see its contents. Two guns had already been discovered and the arrest occurred at night.

Here the search of the closed box was made after the Neumanns were removed from their car and handcuffed. There was no longer any danger that either of them could obtain a weapon from the box or destroy any evidence contained in it. Moreover, there was no reason for the officers to suspect the box contained explosives or other dangerous instrumentalities.

A more difficult problem is posed by the government's contention that the search was justified under the automobile exception to the warrant requirement. The Supreme Court in *Chadwick* expressly recognized the continued viability of this exception.

> [T]his Court has recognized significant differences between motor vehicles and other property which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts.

> Our treatment of automobiles has been based in part on their inherent mobility, which often makes obtaining a judicial warrant impracticable. Nevertheless, we have also sustained 'warrantless searches of vehicles . . . in cases in which the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not non-existent.'

> The answer lies in the diminished expectation of privacy which surrounds the automobile:

> > 'One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. . . . It travels public thoroughfares where both its occupants and its contents are in plain view.'

*United States v. Chadwick, supra,* 433 U.S. at 12, 97 S.Ct. at 2484 (citations omitted).

In *Stevie,* however, this court held that while in that case officers were authorized to seize suitcases from the rear of the arrestees' station wagon, they were not authorized to open and search those suitcases without a warrant. We said in part:

> The Court in *Chadwick* clearly held that an individual has a legitimate expectation of privacy in the contents of luggage. Every factor which the Court cites in support of its holding remains present whether the luggage is *inside* or *outside* an automobile.

*United States v. Stevie, supra,* 582 F.2d at 1179 (emphasis in original).

We thus rejected the position taken by the Ninth Circuit in *United States v. Finnegan,* 568 F.2d 637, 641 (9th Cir. 1977), which held that *Chadwick* does not apply to luggage taken directly from an automobile.

Yet the *Stevie* case does not provide a solution to the problem now before this court. We intimated there that we might agree with the result in two other companion Ninth Circuit cases, *United States v. Ficklin* (and *United States v. Seefeldt*), 570 F.2d 352 (9th Cir. 1978), *petition for cert. filed,* 46 U.S.L.W. 3741 (May 17, 1978) (No. 77–1635), which sustained the search of plastic and burlap bags located in a car trunk. Judge Heaney, writing for the majority in *Stevie,* stated that the *Ficklin* case might be distinguished from cases involving the search of luggage "on the ground that there is not as great an expectation of privacy 'in plastic and burlap bags' . . ." *United States v. Stevie, supra,* 582 F.2d at 1179, n.4. Likewise, Chief Judge Gibson, who dissented in *Stevie* on the ground that the search of the suitcase should be upheld under the automobile exception, noted that "the application of *Chadwick* to personal property other than locked luggage remains to be decided in this circuit." *United States v. Stevie, supra,* 582 F.2d at 1181 (C. J. Gibson, dissenting). This question is now before us in the form of a closed, but otherwise unsealed, Dayton's Department Store box found sitting on the floorboard of the Neumanns' automobile.

This court is of the opinion that the warrant requirement in *Chadwick* should not be extended to the facts of this case. There is simply an insufficient expectation of privacy in an unsecured cardboard box sitting in plain view in the passenger compartment of an automobile. The arresting officers

merely lifted the lid of the box and discovered a large quantity of pills. Unlike the situation in *Stevie*, where the officers could have seized and inventoried the locked suitcase as a unit without fear of loss or theft of the contents, here it was reasonable for the officers to promptly examine the contents of the box and later to have the drugs properly inventoried and secured. This procedure protected the legitimate interests of the arresting officers, including protection against unwarranted allegations of theft or loss, and could well have protected the interests of the Neumanns in having their property properly identified, safely kept and returned had not the box contained a controlled substance.

Further, the officers had probable cause to believe the box contained illicit drugs. Ms. Davis had admitted obtaining both heroin and demerol capsules from "Sandy." Rassmusen had reported seeing a box of pills in the duplex after his first visit. Ms. Dowdie told him shortly thereafter that the Neumanns had left the duplex with drugs in their possession. And Officer Strauss watched them get in their car with a box and drive away. The search of both the box and car was thus fully justified under the automobile exception.[3] *See Dyke v. Taylor Implement Co.*, 391 U.S. 216, 221, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968).

Affirmed.

---

3. In the alternative, we hold that this search was justified as a valid inventory search under *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Since the arresting officers were justified in conducting a full inventory search of the box at the station house, it would be unreasonable to hold in these circumstances that a cursory examination of the contents at the scene of the arrest was improper.