**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jane Nadia JIMENEZ,
Defendant-Appellant.**

**No. 79–2190.**

United States Court of Appeals,
Seventh Circuit.

Argued June 9, 1980.

Decided Aug. 6, 1980.

Rehearing and Rehearing In Banc
Denied Oct. 8, 1980.

Raymond D. Pijon, Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., James P. White, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT and WOOD, Circuit Judges, and LARSON,* Senior District Judge.

---

* The Honorable Earl R. Larson, Senior United States District Judge for the District of Minne- sota, sitting by designation.

LARSON, Senior District Judge.

Defendant Jane Nadia Jimenez appeals from a finding of guilty of unlawful possession with intent to distribute 1,019.49 grams of a substance containing heroin, in violation of 21 United States Code § 841(a)(1). She contends that certain evidence seized by the Drug Enforcement Administration (DEA) from the trunk of her automobile should have been suppressed. Second, the defendant argues that the DEA had no probable cause to search the automobile trunk. Finally, the defendant claims that the district court erred in refusing to dismiss the indictment because the DEA agents instructed the defendant to conceal information from her court-appointed counsel. We affirm.

Defendant, after waiving her right to trial by jury, was found guilty of violation of § 841(a)(1) on August 24, 1979, after a bench trial in the United States District Court, Northern District of Illinois.[1] The DEA had come upon information connecting the defendant to possible large scale drug transactions in the Chicago area pursuant to a valid search warrant in 1976.[2] Surveillance activities over a period of approximately one month established that the defendant had contact with other suspected drug traffickers. On the day of her arrest, defendant parked in the parking lot of a restaurant known by the DEA agents to be involved in the drug scene. A gold Oldsmobile drove through the lot and past the defendant's car three times; the driver of the Oldsmobile finally parked next to the defendant's car, and gave a brown paper bag to the defendant. After the driver of the gold Oldsmobile returned to his car, the defendant got out of her car and placed the paper bag and its contents in the trunk of her automobile. Jimenez, still under the surveillance of the DEA agents, left the parking lot. Shortly thereafter, the DEA agents pulled the defendant's car over. As one of the DEA agents approached the defendant, he asked her what was in the paper bag she placed in the trunk; the defendant replied, "You know what it is." At that point, the agent opened the trunk of Jimenez's vehicle and inspected the bag, which contained 40 one-ounce packages of a substance containing heroin.

This Court has already determined that the DEA agent had probable cause to search the trunk of the vehicle. *See United States v. Jimenez*, 602 F.2d 139 (7th Cir. 1979):

> "As we view the case, even if the officers did not have probable cause to arrest the defendant before she made the suppressed statement, they clearly had a reasonable suspicion 'that criminal activity may be afoot,' and thus could legally stop the defendant and make inquiries. . . . Having legally stopped her and asked her but one question, she made the suppressed statement ['you know what it is'] which, assuming *arguendo* that probable cause did not already exist, provided the probable cause for the search of her trunk and seizure of the bag and her subsequent arrest." *Id.* at 142 (citations omitted).

Thus, this opinion will discuss only the first and third issues raised by the appellant.

Appellant contends that the bag and its contents, which were seized from the trunk of her automobile, should have been suppressed under the decision of the United States Supreme Court in *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). In *Sanders* the Supreme Court held that personal luggage may not be searched without a search warrant even though it is seized from an automobile:

---

1. The Honorable Nicholas J. Bua, United States District Judge for the Northern District of Illinois.

2. In late 1976, the DEA, in cooperation with the Chicago Police Department, uncovered information relating to wholesale narcotics transactions in the Chicago area, in excess of two million dollars in value. The name "Pollo" appeared on a number of the recovered records; "Pollo" was the nickname for one Guillermo Jimenez. Further investigation revealed that Guillermo Jimenez lived at the same residence as the defendant. Periodic surveillance of the defendant resulted from this information.

"Indeed, the very purpose of a suitcase is to serve as a repository for personal items when one wishes to transport them. Accordingly, the reasons for not requiring a warrant for the search of an automobile do not apply to searches of personal luggage taken by police from automobiles." *Id.* at 764–65, 99 S.Ct. at 2593–94.

We do not find that the decision in *Sanders* is dispositive of the issue presently before us.

▪ As a general rule of constitutional law searches and seizures must be both reasonable and accompanied by a validly executed search warrant. *See, e. g., id.* at 758–59, 99 S.Ct. at 2590–2591; *United States v. Chadwick*, 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977). Exceptions to this rule do exist, however. The question before us, therefore, is whether the search of the paper bag found in the trunk of appellant's automobile was valid under an exception to the warrant requirement. Under the circumstances of this case, we find that the search was proper.

The Eighth Circuit Court of Appeals was confronted with an essentially identical situation to that before us today in *United States v. Neumann*, 585 F.2d 355 (8th Cir. 1978). The defendant in *Neumann* was observed placing a cardboard box in the trunk of his vehicle; later, the defendant was stopped, and the vehicle and box were seized. The cover of the box was removed and the box found to contain a controlled substance. The Eighth Circuit held that the search of the box was not justified either as incident to a valid arrest, *see id.* at 359, or under the automobile exception to the warrant requirement. *See id.* at 360. The court found, however, that there was not a sufficient expectation of privacy in the box to justify extending the warrant requirement to the facts of that case:

"This court is of the opinion that the warrant requirement in *Chadwick* should not be extended to the facts of this case. There is simply an insufficient expectation of privacy in an unsecured cardboard box sitting in plain view in the passenger compartment of an automobile. The arresting officers merely lifted the lid of the box and discovered a large quantity of pills. Unlike the situation in *Stevie*, [582 F.2d 1175] where the officers could have seized and inventoried the locked suitcase as a unit without fear of loss or theft of the contents, here it was reasonable for the officers to promptly examine the contents of the box and later to have the drugs properly inventoried and secured. This procedure protected the legitimate interests of the arresting officers, including protection against unwarranted allegations of theft or loss, and could well have protected the Neumanns in having their property properly identified, safely kept and returned had not the box contained a controlled substance." *Id.* at 360–61.

We find the reasoning of the Eighth Circuit, at least insofar as the facts of this case are concerned, to be persuasive. Although a set of facts certainly may exist where an individual has a high expectation of privacy in the contents of a box or perhaps a paper bag, we do not find that such an expectation of privacy existed here. It was just as reasonable in this case for the officers to examine and inventory the contents of the paper bag as it was in *Neumann*. Accordingly, we reject appellant's claim that the bag and its contents should have been suppressed.

After her arrest, in a conversation with two DEA agents, appellant apparently expressed a desire to cooperate with the DEA in its attempt to apprehend other parties to the drug transaction that took place in the restaurant parking lot. The exact circumstances under which this "cooperation" took place are not certain, although it is clear that Jimenez did work with the DEA for three or four days following her arrest. Such cooperation is certainly proper and to be encouraged. Since the cooperation took place, however, a dispute has arisen as to whether the DEA interfered with appellant's relationship with her attorney in securing or accepting her cooperation.

Appellant's counsel was not informed of her cooperation with the DEA until after

appellant terminated the relationship. The government contends that counsel was not notified because appellant insisted that no one, including her counsel, be informed that she was cooperating with the DEA. The DEA had appellant execute a DEA Form 13 "Statement of Rights and Waiver," which consisted of a statement written by appellant of her desires with respect to her cooperation. The literal translation of what appellant wrote is as follows: "I cooperate with the Drug Enforcement. I do not want lawyer, Mr. Raymond D. [her court appointed counsel] or another defender or advisor to know this." Appellant suggests, on the other hand, that the DEA agents advised her not to tell her lawyer and promised her that she would not be prosecuted if she cooperated. After appellant terminated her cooperation with the DEA, she advised her attorney of what had happened and moved for dismissal of the indictment because this allegedly interfered with her relationship with her attorney.

Although we do not condone the procedure employed by the DEA in securing appellant's cooperation after her arrest, we do not find that appellant had been prejudiced in any way by the above occurrences. From the record before us, and appellant has not disputed this, no information elicited from appellant after her arrest was used in the trial before Judge Bua. The bench trial was conducted on the basis of stipulated facts, all of which were within the knowledge of the DEA at the time of appellant's arrest. Finding no prejudice, there is no basis for granting a new trial or dismissing the indictment against appellant.

In reaching this conclusion, we do not suggest, however, that the tactics of the DEA in securing her cooperation were appropriate. Although the DEA suggests that appellant on her own wrote down the terms of her cooperation, the wording of the waiver suggests otherwise. Appellant's native language was Spanish and she had only a few years of traditional education; it would appear that her command of English was minimal. Yet, the DEA argues that appellant, without prompting, chose the language "or another defender or advisor." This argument strains this Court's imagination. It must be remembered that the relationship between a defendant and his or her counsel is fundamental and must be protected from unwarranted intrusion. Had the DEA uncovered information reflecting on the charges against appellant, such information may well have had to be suppressed. Since no such information was uncovered, no prejudice in fact occurred. The judgment of conviction accordingly must be affirmed.