THE STATE OF OHIO, APPELLEE, *v.*
MCGLOWN, APPELLANT.

(No. L-81-202—Decided
January 29, 1982.)

*Mr. Anthony G. Pizza,* prosecuting
attorney, *Ms. Ruth Ann Franks* and *Mr.
Joseph Wilson,* for appellee.
*Mr. Terrence C. Jones,* for appellant.

POTTER, J. Defendant appeals the
judgment and sentence of the Common
Pleas Court of Lucas County for a viola-
tion of R.C. 2925.03(A)(4), aggravated
trafficking. On December 16, 1980, the
Lucas County Grand Jury returned a
three-count indictment against defen-
dant, Ray McGlown, charging two counts
of possession of a controlled substance, in
violation of R.C. 2925.03(A)(4), and one
count of possession of a controlled
substance, in violation of R.C. 2925.11.

The indictment stems from the execu-
tion of a search warrant on November 5,
1980, by members of the Toledo
Metropolitan Drug Unit accompanied by
Oregon police officers for premises
known as 846 Isaac, Apt. No. 618, in
Oregon, Lucas County, Ohio, occupied by
Hulet E. McGlown and Ray McGlown.

The search warrant for dilaudid and other
controlled substances was issued by
Judge Wetli, Oregon Municipal Court,
based on the information provided by
Detective D. Michael Collins that a large
quantity of controlled substances was be-
ing kept and trafficked on the premises.

On November 5, 1980, the officers ar-
rived at 846 Isaac, Apt. No. 618, and were
met at the door by the defendant who was
apparently exiting the apartment. He
identified himself as Ray McGlown. The
police announced that they were armed
with a search warrant for contraband.
Evidence is conflicting as to defendant's
conduct, but two officers testified that
they immediately saw movement of defen-
dant's right hand which was in or near
defendant's right coat pocket. Fearing for
their safety, one officer seized defendant
and removed defendant's hand from his
coat pocket. The officer reached in and
retrieved a brown paper bag containing
cocaine. At the same time, a second of-
ficer frisked defendant. Defendant was
given his *Miranda* warnings and then
signed a waiver of his rights. Defendant
acknowledged that he had purchased the
cocaine found in the brown paper bag.
Defendant was than arrested for posses-
sion of the cocaine. Defendant was in-
dicted and pled not guilty to all three
counts of the indictment.

Defendant filed a motion to suppress
the evidence seized from his person, alleg-
ing that the search warrant entitled the
officers to search only the premises, and
that the search of defendant was un-
constitutional. The trial court denied
defendant's motion to suppress. On the
day of trial, defendant waived his right to
a trial by jury and entered a plea of no
contest to the offense of aggravated traf-
ficking, in violation of R.C. 2925.03(A)(4).
The prosecutor requested and was
granted a nolle prosequi on the second
and third counts of the indictment. Defen-
dant was sentenced on July 8, 1981.
Defendant appeals and assigns the follow-
ing as error:

"First assignment of error

"The court erred when it overruled appellant's motion to suppress the evidence.

"Second assignment of error

"The appellant was denied equal protection of the laws as provided in the Fourteenth Amendment to the United States Constitution by the state improperly placing cocaine in schedule two of the Controlled Substances Act when cocaine, in fact, is not a narcotic drug."

In the first assignment of error, defendant-appellant alleges that the search of his pocket was unreasonable and in violation of his Fourth Amendment rights. Therefore, he contends that the trial court erroneously denied the motion to suppress the evidence seized from his pocket. Defendant-appellant argues that the police officers exceeded the scope of the search warrant, did not have probable cause to believe that defendant-appellant was involved in illegal activities nor any reason to believe that defendant-appellant was presently armed and dangerous.

We agree with defendant-appellant that the search of defendant was not authorized pursuant to the search warrant for the premises. The search warrant was issued based upon probable cause that contraband was concealed on the premises and this authorized the police officers to search only the apartment. This is clearly set forth in *Ybarra* v. *Illinois* (1979), 444 U.S. 85, at 91, where the court stated the following:

"But, a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. *Sibron* v. *New York,* 392 U.S. 40, 62-63. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the 'legitimate expectations of privacy' of persons, not places. See *Rakas* v. *Illinois,* 439 U.S. 128, 138-143, 148-149; *Katz* v. *United States,* 389 U.S. 347, 351-352."

The state, however, contends that *Ybarra, supra,* is not dispositive of the case since the circumstances of the case *sub judice* justify a warrantless search.

The mandate of the Fourth Amendment was expressed in *Katz* v. *United States* (1967), 389 U.S. 347, at 357, when the court stated:

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions."

One of the well-recognized exceptions to the warrant requirement is the limited search permitted by *Terry* v. *Ohio* (1968), 392 U.S. 1 [44 O.O.2d 383]. In *Terry,* at page 24, the court stated the following:

"When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."

*Terry, supra,* recognized that each case of this sort will, of course, have to be decided on its own facts. In making this determination, the underlying principle of the Fourth Amendment, as reiterated in *Pennsylvania* v. *Mimms* (1977), 434 U.S. 106, is as follows:

"The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' *Terry* v. *Ohio,* 392 U.S. 1, 19 [44 O.O.2d 383] (1968).

Reasonableness, of course, depends 'on a balance between the public interest, and the individual's right to personal security free from arbitrary interference by law officers.' *United States* v. *Brignoni-Ponce*, 422 U.S. 873, 878, (1975)." 434 U.S. at 108-109.

In determining "the reasonableness in all the circumstances," the court in *Terry, supra,* at page 27, requires specific information rather than mere hunches that the officer has reason to believe he is dealing with an armed and dangerous individual:

"The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. Cf. *Beck* v. *Ohio,* 379 U.S. 89, 91 [31 O.O.2d 80] (1964); *Brinegar* v. *United States,* 338 U.S. 160, 174-176 (1949); *Stacey* v. *Emery,* 97 U.S. 642, 645 (1878). And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience."

See, also, *Sibron* v. *New York* (1968), 392 U.S. 40 [44 O.O.2d 402].

In the case *sub judice,* the police officers gained access to defendant's apartment pursuant to a search warrant[1] based upon probable cause that narcotics were being kept and trafficked on the premises. When the officers approached, defendant-appellant appeared at the door. Two officers, who testified at the suppression hearing, indicated that upon seeing defendant they immediately noticed the movement of defendant-appellant's right hand in his jacket pocket. Both officers immediately grabbed defendant-appellant.

One police officer frisked defendant from the waist down, while the other removed defendant's hand from his pocket and reached in to remove the contents.

The court in *Michigan* v. *Summers* (1981), 452 U.S. 692, at 702-703, recognized the potential danger in the execution of a search warrant for narcotics:

"Less obvious, but sometimes of greater importance, is the interest in minimizing the risk of harm to the officers. Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation. Cf. 2 W. LaFave, Search and Seizure § 4.9, pp. 150-151 (1978)." (Footnote omitted.)

See, also, *State* v. *Broadnax* (1981), 29 Wash. App. 443, 628 P. 2d 1332, where the court held that "in a private residence where illegal drugs recently have been sold, it is appropriate for the officers to conduct a 'frisk' for weapons before carrying out the command of a court to search the place." *Id.* at 1333. As that court noted, "Such a situation is fraught with danger to begin with, *State* v. *Sloughter,* 14 Wash. App. 814, 545 P. 2d 32 (1976), and the searching officers are particularly vulnerable to attack while discharging their duty." 628 P. 2d at 1334.

We find that the officers presented articulable facts indicating that a reasonably prudent man would believe defendant-appellant was presently armed and dangerous. In light of these circumstances, a reasonably prudent person would be warranted in the belief that his safety and that of others were endangered and, therefore, the officers' actions were not unreasonable. *Terry* v. *Ohio, supra.*

Defendant-appellant contends that

---

[1] Defendant does not argue that the search warrant was invalid or unsupported by probable cause.

the intrusion into his pocket exceeded the permissible pat down authorized by *Terry* v. *Ohio, supra.*

As indicated above, fundamental Fourth Amendment principles require that all searches and seizures be reasonable. This determination mandates the balancing of the public interest and the individual's right to be free from arbitrary governmental interference. See, *Pennsylvania* v. *Mimms, supra.* In *Terry* v. *Ohio, supra,* the court applied this standard and determined that the public interest of protecting police officers who have articulable reasons to believe someone is presently armed and dangerous, permits the officer to make a limited intrusion to search for weapons. In *Adams* v. *Williams* (1972), 407 U.S. 143, the court applied the *Terry* standard and held that when a police officer is properly investigating an individual and has information as to the location of the weapon, "the policeman's action in reaching to the spot where the gun was thought to be hidden constituted a limited intrusion designed to insure his safety, and we conclude that it was reasonable." *Adams* at 148, See, also, *United States* v. *Hill* (C.A. 9, 1976), 545 F. 2d 1191; *State* v. *Warren* (1979), 124 Ariz. 279, 603 P. 2d 550; *State* v. *Lomax* (1979), 24 Wash. App. 541, 603 P. 2d 1267; *People* v. *Casias* (1977), 193 Colo. 66, 563 P. 2d 926.

Applying this standard to the case *sub judice* we find that the circumstances justified the police officer's reaching to the location where the weapon was thought to be hidden. The police officers limited the scope of their intrusion to a search for weapons. One police officer frisked the defendant while the other officer searched the one location where the police believed defendant was harboring a weapon. The police did not conduct a full search of all of defendant's pockets. The testimony at the suppression hearing indicates that the scope of the search was limited by its purpose to a search for weapons and was not a nominal weapons search which could only have been aimed at procuring evidence.[2]

We, therefore, find that the limited intrusion by the officer into defendant-appellant's pocket, based upon the facts of this case, was not unreasonable and does not violate defendant-appellant's Fourth Amendment rights.

Defendant-appellant next contends that the police officers violated his Fourth Amendment rights by opening the brown paper bag retrieved from defendant-appellant's coat pocket. Defendant-appellant asserts that once the officers recognized that due to the weight of the bag, it did not contain a weapon, they were precluded from further intrusions into the bag until they obtained a search warrant.[3]

We find that the officers' search of the paper bag does not violate Fourth Amendment protections. The police officers legally seized the brown paper bag. This seizure from defendant-appellant occurred during the execution of a search warrant for narcotics at defendant-

---

[2] In *Terry* v. *Ohio* (1967), 392 U.S. 1 at 25-26 [44 O.O.2d 383], the court addressed the purpose, character, and extent of a limited search for weapons as follows:

"A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. *Warden* v. *Hayden,* 387 U.S. 294, 310 (1967) (Mr. Justice Fortas, concurring). Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a 'full' search, even though it remains a serious intrusion."

[3] Defendant-appellant fails to cite any authority to support this position. Defendant-appellant's contention is based upon his own presumptions of what the officer sensed when he reached into the defendant's pocket and not on evidence presented at the suppression hearing.

appellant's residence. The paper bag is a container in which it would be reasonable to carry narcotics. To argue, as defendant-appellant does, that police officers who have a warrant for premises to search for narcotics are required to obtain a second search warrant for a container which, had they seized in any other legal manner, they could search pursuant to the warrant, does violence to the Fourth Amendment. The fact that police officers obtained possession of the container through a legal *Terry* search does not vitiate the effect of the search warrant.

A similar issue was addressed in *Walker* v. *United States* (C.A.D.C., 1963), 327 F. 2d 597, where officers executing a warrant to search a residence obtained from defendant's hands receptacles containing contraband. The court stated at page 600:

"We think it not unreasonable for the officer to have supposed that the heroin on the premises might be in these containers. Had the paper bag been on a table or on the floor in the apartment, it would clearly have been within the ambit of the warrant. We do not think it was less so here because it was in appellant Woody's hands. To hold otherwise, on the facts of this case, would be to suggest that a warrant to search premises may be frustrated by the device of simply picking up the guilty object and holding it in one's hand. No constitutional or statutory limitations that we know of require any such result."

The court reaffirmed that the authority of a search warrant for premises does not confer authority to search persons, citing *United States* v. *Di Re* (1948), 332 U.S. 581, followed in *Ybarra* v. *Illinois, supra.* However the *Walker* court found that the execution of the warrant in question rationally comprehended within it the right to take the wallet and bag from the hands of appellant.

It has also been held that police officers executing a warrant to search a residence for particular items are not required to obtain a second warrant before opening a small locked box which they found during the search and which they reasonably believed might contain the items described in the warrant. In *State* v. *Thisius* (Minn. 1978), 281 N.W. 2d 645, the court distinguished *United States* v. *Chadwick* (1977), 433 U.S. 1, which required police officers who had lawfully seized a footlocker of the defendant, pursuant to one of the exceptions to the warrant requirement, to first obtain a warrant before opening the locker. In *State* v. *Thisius, supra,* the court held that since the police officers lawfully came upon the container under circumstances which suggested to them that one of the items they were searching for might be in the container, the officers were not required to obtain a second warrant specifically authorizing the intrusion into the container.

Other courts have addressed this issue based upon the underlying principle that the Fourth Amendment "protects people from unreasonable government intrusions into their legitimate expectations of privacy." *United States* v. *Chadwick, supra,* at 7. Government intrusion into a place where defendant-appellant does not have a legitimate expectation of privacy is not a Fourth Amendment violation. *Rawlings* v. *Kentucky* (1980), 448 U.S. 98. In *United States* v. *Brown* (1980), 635 F. 2d 1207, the Sixth Circuit Court of Appeals determined that to establish an expectation of privacy, defendant must have a subjective expectation of privacy and defendant's expectation must, as an objective matter, be one that society is prepared to recognize as reasonable. The court recognized that this determination must be made on a case by case basis and found that the F.B.I.'s search of a brown paper bag seized from defendant's car was not unreasonable since "nothing about the bag itself or the way it was used indicates an expectation of privacy * * *." 635 F. 2d, at 1211. See, also, *United States* v. *Jiminez* (C.A. 7, 1980), 626 F. 2d 39; *United States* v. *Neumann* (C.A. 8, 1978), 585 F. 2d 355; *United States* v. *Goshorn* (C.A. 1, 1980), 628 F. 2d 697. We

find that based upon the facts before this court, there is no showing of a legitimate expectation of privacy in the unsealed brown paper bag.

In light of the facts presented in the case *sub judice*, we find that the police action in regard to the search of the paper bag did not violate defendant-appellant's Fourth Amendment rights: one, there was no showing of a legitimate expectation of privacy, and two, the search of the bag was permissible pursuant to the search warrant. We therefore find that the trial court did not err in denying defendant's motion to suppress. Defendant-appellant's first assignment of error is without merit.

Defendant-appellant's second assignment of error alleges that the state improperly placed cocaine in Schedule II of the Controlled Substances Act when cocaine is not a narcotic drug. Defendant-appellant alleges that this violates the Fourteenth Amendment Equal Protection Clause.

Defendant-appellant supports this argument by submitting the testimony of a certified pharmacist given in a case unrelated to defendant's. This testimony was not presented to the trial court in the case *sub judice* and may not be presented for the first time to the court of appeals. It is fundamental that a reviewing court will consider only those errors that were preserved in the lower court. 4 Ohio Jurisprudence 3d 298, Appellate Review, Section 137. Therefore, defendant-appellant's second assignment of error is not well taken.

On consideration whereof, this court finds that the defendant was not prejudiced in the proceedings before the trial court, and the judgment of the Lucas County Court of Common Pleas is affirmed at appellant's costs.

This cause is remanded to said court for execution of sentence and for costs.

*Judgment affirmed.*

CONNORS, P.J., and BARBER, J., concur.